UNITED STATES of America,
Plaintiff–Appellee,

v.

Hovsep MIKAELIAN, Defendant–
Appellant.

Nos. 97–50174, 97–50184, 97–
50260 and 97–50295.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 4, 1998.

Decided Feb. 17, 1999.

David A. Katz, Los Angeles, California, for the defendant-appellant.

Stephen G. Larson, Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellee.

Before: BETTY B. FLETCHER, ROBERT BOOCHEVER, and DAVID R. THOMPSON, Circuit Judges.

BOOCHEVER, Circuit Judge:

Hovsep Mikaelian appeals from the sentence imposed by the district court following his guilty plea in a conspiracy to purchase and sell fuel oil without paying federal excise tax, among other offenses. Mikaelian pleaded guilty to mail, wire, and tax fraud, failure to register for federal excise tax, conspiracy to possess narcotics with intent to distribute, and telecommunications fraud. He challenges the district court's consideration of *in camera* documents at sentencing, the failure to grant him a downward departure for substantial assistance, and other alleged sentencing errors. We affirm in part and reverse in part.

## FACTS

In 1994 and 1995, a group of ten men conspired to avoid payment of motor fuel excise taxes by fraudulently obtaining, in the names of legitimate companies, permits to sell fuel on the wholesale market. The group then purchased large amounts of fuel through Magnum Oil Company in Burbank, California, and proceeded to sell the fuel at retail service stations without paying the required state and federal diesel fuel excise taxes. The proceeds were deposited in bank accounts the group controlled. Mikaelian was a fuel broker who arranged the sale of the untaxed fuel to retail customers.

In attempts to avoid detection, the group used aliases, obtained mail boxes in assumed names, and used cellular telephones encoded with the serial numbers of uninvolved, innocent users. Some members of the group, including Mikaelian, sold heroin to others involved in the fuel tax sales. The plan evaded $2,262,601 in state taxes and $172,679 in federal taxes.

Unfortunately for the men involved in the scheme, Magnum Oil was actually part of a sting operation by the Federal Bureau of Investigation ("FBI") to detect such tax evasion, and the individuals who purchased drugs from Mikaelian were undercover agents. In September 1995, Mikaelian was

indicted on counts of mail fraud and wire fraud and conspiracy to commit each of them, as well as failure to register regarding federal excise tax. Mikaelian was also named in a separate indictment for trafficking in narcotics and conspiracy to commit those acts.

In May 1996, Mikaelian entered a plea of guilty to the count charging conspiracy to commit mail and wire fraud and to evade excise taxes, to one count of conspiracy to possess heroin with the intent to distribute, and to three added counts of telecommunications fraud for the use of the "cloned" cellular phones, in violation of 18 U.S.C. § 1029.

The plea agreement provided that Mikaelian agreed to cooperate fully with law enforcement, "respond[ing] truthfully and completely to any and all questions or inquiries ... whether in interviews, before a grand jury or at any trial(s) or other Court proceeding(s)." In return, the government agreed to "bring to the Court's attention the nature and extent of [Mikaelian's] cooperation, including specific references to the criteria set forth in sentencing guideline 5K1.1(a)." The agreement provided that any motion for downward departure was discretionary, and that a failure to move for a downward departure would not be grounds for withdrawal of the guilty plea.

When the government filed its sentencing position in November 1996, however, it declined to move for a downward departure for substantial assistance because in its opinion "defendant has not meaningfully cooperated." Despite five opportunities to be interviewed, the government stated that Mikaelian "either was unwilling to speak or provided the federal and state law enforcement officers conducting the interviews inconsistent statements concerning his own involvement and the involvement of his co-conspirators in various criminal activities, made numerous material omissions, and on several occasions made blatant misrepresentations." Examples included Mikaelian's various inconsistent stories regarding how many times he had distributed narcotics; what types and quantities he had distributed; his stating that he did not know a codefendant well, and then stating that the codefendant was his cousin and employee; and three "extensive but mutually inconsistent versions of his business and criminal relationship with [another codefendant]." Internal Revenue Service Agent Kathryn Montemorra, who attended all the meetings, filed a declaration stating:

> The collective judgment of those involved in these debriefing sessions was that defendant was not honest, frequently misrepresented facts or would often change the facts in a story that he had previously told, and his answers particularly with respect to his narcotics trafficking were vague and confusing. In my judgement [sic], defendant told us what he thought we knew, and no more.

In addition, on March 20, 1997, the government filed the FBI's written report of Mikaelian's debriefing sessions. The report was filed *in camera*, "to avoid its dissemination and prevent compromising on-going investigations." The debriefing report, which was not given to defense counsel, details Mikaelian's statements regarding his coconspirators over the course of four interviews, and includes a number of statements impugning Mikaelian's veracity.

At the sentencing hearing, defense counsel stated that he had noticed in a footnote in the government's 67–page sentencing position that the government had submitted the debriefing report to the court *in camera*, and that he had not received a copy of it. Counsel argued that the government had stated it would not rely at the sentencing hearing on any statements made by Mikaelian during debriefing sessions. Counsel complained that "they now turned right around and have given [the debriefing report] only to your Honor and not given it to us." Counsel stated that "a man cannot be sentenced in a Federal Court in the United States where the Court has seen a critical document as to whether he has cooperated or not and the defense has been deprived of that."

The government replied that it "took the position in its earlier paper that it would not rely on any statements in that [debriefing report]." The government reiterated that it filed the document under seal and *in camera* because of a "security risk:" "We have had experiences in this case where debriefing [reports] have found their way, within two

days, back to the MDC [apparently the Metropolitan Detention Center] in Brooklyn and into the Armenian community back in New York."

The court declined to disclose the report to the defense, stating:

> With respect to the debriefing report, the Government is not relying upon that for purposes of its upward departure and therefore [it] will not be considered for purposes of its upward departure, at all.

> Whether or not the debriefing has any influence in terms of the Court's decision on whether there should be a departure for or decrease for substantial assistance, we will address that point as we hear argument, Counsel.

During argument, defense counsel protested the government's failure to move for a 5K1.1 downward departure for substantial assistance, pointing out that Agent Montemorra's declaration "doesn't cite one single fact [Mikaelian] supposedly misrepresented." When counsel again asked what would happen with the debriefing report filed *in camera*, the court stated that the government was "not relying on [the debriefing report] for their upward departure arguments. So I'm not going to rely on it either." The court then rejected defense counsel's argument that the terms of the plea agreement compelled the government to move for a downward departure for substantial assistance.

The defense next argued that the government acted in bad faith in refusing so to move, because Mikaelian had cooperated. Defense counsel also argued that the government's "extraordinary meeting with the ex-paralegal" for Mikaelian constituted part of the bad faith. The government responded that it had not acted in bad faith, and that the debriefing sessions ended because Mikaelian was not truthful.

The court declined to make a downward departure for substantial assistance, and stated

> [t]he Court is of the view that the defendant has not introduced any evidence sufficient to carry its showing or sufficient to establish a showing on the 5(k)1 [sic] that

there has been any bad faith or unconstitutional action on behalf of the Government.

The court then sentenced Mikaelian with this final mention of the *in camera* debriefing report, declining to provide a copy to the defense:

> The debriefing was not relied upon by the Court for purposes of—as it turned out, it's irrelevant because they withdrew their motion for upward departure [on the basis of underrepresented criminal history].

> So it may have been considered by the Court for that purpose but certainly was not considered because the motion has been withdrawn.

> . . . .

> The Court has indicated to [the defense] that you have not made any sufficient evidentiary showing that the refusal of the Government to move for downward departure under 5K1.1 is occasioned by bad faith or other unconstitutional motives or means.

> . . . . You cannot have [the debriefing report].

The district court sentenced Mikaelian to a prison term of 168 months, five years of supervised release, and restitution in the amount of $2,435,280.

## DISCUSSION

### I. SUBSTANTIAL ASSISTANCE

#### A. *Discretion*

U.S. Sentencing Guidelines Manual § 5K1.1 provides that "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines." Among the reasons that the court may state for determining the appropriate reduction are the court's evaluation of the usefulness of the defendant's assistance, taking into account the government's evaluation of the assistance; the truthfulness, completeness and reliability of any information provided by the defendant; and the nature and extent of the assistance. *Id.* at § 5K1.1(a).

■ Although the district court generally has discretion whether to grant a downward departure under this section, Mikaelian argues that the plea agreement left the government no discretion to decide whether to file a § 5K1.1 motion for substantial assistance. The words of the plea agreement belie that contention. First, the agreement states in section 9, "the Court will be entitled to consider your failure to fulfill any of your obligations under this agreement," which included the obligation to cooperate fully, truthfully and completely. Second, section 10 of the agreement provides:

This Office is willing to consider future cooperation by you in determining whether any such motions for departure are appropriate. You understand that any decision to move for a reduction of your sentence is within the discretion of this office and that a decision by this Office not to file a motion for a downward departure will not allow you to withdraw your plea of guilty or fail to comply with your obligations, as set forth in this agreement.

[*Id.*]

Mikaelian argues that this passage from the plea agreement gives the government discretion whether to file a motion for reduction of a previously imposed sentence, but does not allow discretion whether to move for a downward departure. But a reading of the entire paragraph, in conjunction with section 9's statement that the government could bring to the court's attention Mikaelian's failure to fulfill his obligations under the agreement, demonstrates that the "motions for departure" that *may* be appropriate *if* the government decides to file them include motions for downward departure as well as motions for reduction of previously imposed sentences. This reading is consistent with cases providing that § 5K1.1 "grants the government the discretion, but does not impose a duty, to move for a departure when the defendant has rendered substantial assistance." *United States v. Murphy,* 65 F.3d 758, 762 (9th Cir.1995); *see Wade v. United States,* 504 U.S. 181, 185, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992).

The plea agreement, on its face, does not require the government to file a substantial assistance motion under any and all circumstances.

### B. *Downward departure*

■ The district court generally lacks the authority to grant a downward departure under 5K1.1 unless the government makes a motion. *Murphy,* 65 F.3d at 762. The district court cannot review the government's discretionary decision not to file the motion, except that "the government cannot refuse to file such a motion on the basis of an unconstitutional motive … or arbitrarily (i.e., for reasons not rationally related to any legitimate government interest)." *Id.* If the government was arbitrary in refusing to file the motion, the district court has the authority to depart downward. *Id.*

### 1. *Factual finding*

■ Mikaelian argues, and the government concedes, that remand is required for the court to make a factual finding whether Mikaelian breached the plea agreement by failing fully to cooperate. While the court may have impliedly made such a finding, we agree that remand is necessary in any event, as discussed hereafter in subsection 2. Although the government has the discretion to decide whether to file the motion, it does not have the last and only word on whether a defendant provided substantial assistance. As in this case, the government may decline to file a motion and state that the defendant did not provide substantial assistance, but the court retains its factfinding function. If the defendant protests that he did indeed cooperate and that the government is acting in bad faith in refusing to file a motion, a factual dispute arises, and the district court can determine whether in fact the defendant did provide substantial assistance as part of the bad faith determination.

### 2. *In camera debriefing report*

■ The transcript of the sentencing hearing leaves unresolved whether the court relied on the *in camera* debriefing report when it stated that the government did not act arbitrarily or in bad faith by refusing to file a § 5K1.1 motion. The report's description of Mikaelian's statements at the debriefing in-

terviews was the only detailed document upon which the district court could base its assessment whether Mikaelian had cooperated, and thus judge the government's good or bad faith in failing to make a motion for downward departure. The court recognized the obvious relevance of the *in camera* document when it asked "how do I determine if there is or is not or was or was not bad faith without some assessment of the nature of the cooperation and the nature of the arguments of the Government as to why that is not sufficient for the government to make the motion?" The court found that Mikaelian did not show that the government was arbitrary in failing to make the motion for downward departure. Yet while the court stated that the document was irrelevant to a possible motion for upward departure, it did not state whether it otherwise relied on the *in camera* document, for example in its determination that there was no bad faith.

The government concedes that "because it filed the debriefing report with the sentencing court, defendant's counsel should properly have been afforded access to that document," and has agreed to disclose the report to the defense subject to a protective order on remand. Such disclosure is appropriate. "[I]t is improper for the prosecution to make, or for the court to receive from the prosecution, an *ex parte* communication bearing on the sentence." *United States v. Alverson,* 666 F.2d 341, 349 (9th Cir.1982) (quotations omitted). In this case, "[u]nder all the circumstances, we cannot say with any certainty that the sentencing judge could avoid being influenced by the *ex parte* submission." *United States v. Reese,* 775 F.2d 1066, 1077 (9th Cir.1985).

We therefore hold that on remand, the debriefing report must be furnished to Mikaelian, subject to a protective order if the district court deems it advisable. We also do not preclude the government from requesting necessary and appropriate redaction prior to the report's release. The district court should make a factual finding whether the government acted in bad faith in not filing a substantial assistance motion, explicitly considering whether the debriefing report sheds light on the issue.

### 3. *Other sentencing recommendations*

The record does not make clear whether the district court relied on the *in camera* debriefing report when it concluded that Mikaelian's purported breach of the plea agreement released the government from its obligation under the agreement to recommend an increase of only three (rather than four) points for Mikaelian's role in the offense and a sentence at the low end of the sentencing range. The government did not have discretion whether to make these recommendations, but was required to make them if Mikaelian fully and completely cooperated. On remand, the district court should determine whether the extent of Mikaelian's cooperation required the government to make these sentencing recommendations.

## II. MEETING WITH DEFENSE PARALEGAL

■ In August 1996, Mikaelian's sister-in-law, a designated paralegal for Mikaelian, called Stephen Larson, the Assistant United States Attorney ("AUSA") in Mikaelian's case, and made an appointment to meet with him. AUSA Larson and the paralegal met the next day. AUSA Larson immediately called defense counsel after the meeting, and followed up with a letter. The letter stated that the paralegal told AUSA Larson that she had just met with Mikaelian in jail, and that Mikaelian wanted her to claim (1) she was having an affair with AUSA Larson, (2) Mikaelian's counsel was a "double agent" for the government, (3) Mikaelian had been under the influence of drugs when he signed the plea agreement, (4) Mikaelian had never read the plea agreement, and (5) Mikaelian's counsel had never explained the agreement to him. The paralegal wanted to be relieved of her position.

### A. *Due process right to counsel*

Mikaelian claims that this meeting violated his due process right to counsel. He cites California State Bar Rule 2–100, which forbids a member of the bar representing a client from communicating directly or indirectly about the subject of the representation with a party the member knows to be repre-

sented by another lawyer, without the other lawyer's consent. *See United States v. Lopez*, 4 F.3d 1455, 1463 (9th Cir.1993) (secret meetings by defendant with federal prosecutor violated prosecutor's ethical duty to avoid communicating with represented defendant without counsel's consent). This situation, however, did not involve a meeting with the defendant, but was more akin to meetings between opposing counsel. Moreover, AUSA Larson immediately called and wrote to Mikaelian's counsel, informing him of the meeting.

As pertains to Mikaelian's Sixth Amendment right to counsel, Mikaelian has not shown an "effect of a constitutional dimension." *United States v. Morrison*, 449 U.S. 361, 366, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981). Mikaelian does not point to any prejudice he suffered. After the paralegal meeting, AUSA Larson continued to offer Mikaelian more chances to cooperate if the defense would submit a written proffer, which it did not.

### B. Effect on sentencing

In his letter to the defense after the meeting, AUSA Larson stated that in the light of Mikaelian's schemes as related by the paralegal, he was considering withdrawing any further opportunities for Mikaelian to cooperate with the government. The government did, however, subsequently offer Mikaelian more debriefing sessions. Nevertheless, defense counsel insisted at the sentencing hearing that the meeting between AUSA Larson and the paralegal and the "lies" told there were evidence of the government's bad faith in refusing to move for a downward departure. The AUSA responded that Mikaelian had not cooperated fully, thus justifying the decision not to move for the departure.

The district court on remand must decide whether the government makes a sufficient showing of Mikaelian's failure to cooperate to refute Mikaelian's bad faith claim. If Mikaelian failed to cooperate fully, then the government's decision not to recommend a downward departure for substantial assistance was not arbitrary or in bad faith, regardless of the meeting with the paralegal.

### C. In camera declaration

The government filed a declaration by AUSA Larson *in camera* and under seal in the district court regarding the meeting with Mikaelian's paralegal (hereinafter "the paralegal declaration").While the defense knew at the time of the sentencing hearing that the court had possession of the debriefing report, it claims it did not know of the existence of an *in camera* paralegal declaration until Mikaelian's counsel read the government's brief in this appeal. This muddies these already murky waters, and the defense predictably and understandably cries foul.

The government states that if this court determines that a remand is necessary, it would rather have the case reassigned to another district judge than disclose the *in camera* paralegal declaration. Because we conclude that the ex parte and *in camera* submission of the declaration leaves the appearance that it might have had an impact on the sentence, and because its disclosure would reveal sensitive material, we hold that on remand, the declaration should not be part of the record unless it is served on the defense. That leads us to the question of whether it is necessary to order resentencing before a different district judge, who has not reviewed the declaration.

### D. Remand to a different district judge

Although resentencing would normally be performed by the same district judge who originally sentenced the defendant,

in "unusual circumstances" resentencing before a different judge may be necessary.... [W]e [have] articulated three factors to consider in deciding whether resentencing by a new judge is appropriate: (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any

gain in preserving the appearance of fairness.

*Alverson,* 666 F.2d at 349 (citations and quotations omitted); *United States v. Chatlin,* 51 F.3d 869, 875 (9th Cir.1995). "The first two of these factors are of equal importance, and a finding of one of them would support a remand to a different judge." *United States v. Hanna,* 49 F.3d 572, 578 (9th Cir.1995) (quotations omitted). The factors are to be considered in the absence of personal bias. *United States v. Huckins,* 53 F.3d 276, 280 (9th Cir.1995).

■ The circumstances in this case are unusual. The judge has reviewed *in camera* documents which may be relevant to sentencing arguments. Ex parte communications with a bearing on the sentence are on the whole improper. *Alverson,* 666 F.2d at 348–49. Although the government has offered to disclose the debriefing report to Mikaelian on remand, subject to a protective order, it adamantly opposes disclosure of the paralegal declaration, preferring reassignment.

We choose to order reassignment. First, the district judge who sentenced Mikaelian may have a difficult time "putting out of his . . . mind" the declaration submitted *in camera* regarding the defense paralegal. *Id.* at 349. Second, the appearance of justice would be served by having another judge, who has not reviewed *in camera* documents unavailable to the defense, conduct the resentencing. Third, although certainly there will be some duplication of effort, this case did not go to trial and thus it does not present a new judge with a voluminous trial record to review.

We do not suggest that the district judge did not attempt to make the sentencing proceedings fair and equitable. *See Reese,* 775 F.2d at 1078 (when ex parte submission is at issue, court of appeals may remand despite conscientious efforts by district judge to achieve fairness at sentencing). The transcript of the sentencing hearing shows that he exercised patience and thoughtfulness. Nevertheless, the unusual circumstances consisting of relevant *in camera* submissions of which the defense did not learn until the

briefing period on appeal, and the government's opposition to disclosure of one of the submissions, call for assignment to a different district judge on remand.[1]

### III. PURITY OF HEROIN

Mikaelian stipulated in the plea agreement to the distribution of over one kilogram of a substance containing a detectable amount of heroin. Later, in his objections to the PSR, he described the substance as "an unusually *im* pure mixture, only 4% heroin," and also expressed "a recently-derived, good-faith doubt whether the amounts and purities are as reported." Mikaelian requested the appointment of an expert to testify that the drug was unusually impure, and moved for production of the narcotics for defense testing under Fed.R.Crim.P. 16 and *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Mikaelian submitted recent articles about mistakes and problems at the FBI crime laboratory in Washington, D.C., and called for an independent drug analysis because he "no longer blithely believes in federal labs." Although the press reports focused on the Washington, D.C. FBI laboratory, Mikaelian contended that Drug Enforcement Agency ("DEA") lab results such as those in his case were suspect as well. The district court denied the motion for appointment of experts and production of the narcotics, and Mikaelian appeals.

#### A. *Brady motion*

■ We review de novo the district court's ruling on the *Brady* motion. *United States v. Amlani,* 111 F.3d 705, 712 (9th Cir.1997); *United States v. Monroe,* 943 F.2d 1007, 1012 (9th Cir.1991).

■ In *Brady,* the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. 1194; *see United States v. Plunk,* 153 F.3d 1011, 1028 (9th Cir.1998) (applying *Bra-*

---

1. Because we remand the case for resentencing, we need not consider Mikaelian's appeal from

the district court's denial of his request for a continuance of the sentencing hearing.

*dy* to sentencing); *United States v. Nagra,* 147 F.3d 875, 881 (9th Cir.1998) (some degree of disclosure required under *Brady* even when defendant pleads guilty). "Evidence is material under *Brady* if 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.'" *United States v. Alvarez,* 86 F.3d 901, 904 (9th Cir.1996) (quoting *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)).

■ There is no indication in the record that the heroin recovered was in a smaller amount, or less pure than four percent. *See Ortiz v. Stewart,* 149 F.3d 923, 935–36 (9th Cir.1998) (record must show that evidence is exculpatory for defendant to establish *Brady* violation). In fact, when he pleaded guilty, Mikaelian stipulated to the amounts of heroin found in the government's original testing. "Stipulations as to material facts . . . will be deemed to have been conclusively established." *United States v. Houston,* 547 F.2d 104, 107 (9th Cir.1976).

Mikaelian does not allege that the government has withheld any evidence favorable to him. The district court thus did not err in denying his *Brady* motion. *See United States v. Taylor,* 802 F.2d 1108, 1118 n. 5 (9th Cir.1986) (for colorable *Brady* claim, defendant must show that evidence sought is favorable to him and material to his innocence or applicable punishment).

## B. *Federal Rule of Criminal Procedure 16*

■ More on point is Mikaelian's motion for inspection of the heroin under Fed R.Crim. P. 16(a)(1)(C), which provides:

> Upon request of the defendant the government shall permit the defendant to inspect . . . tangible objects . . . which are within the possession, custody, or control of the government and which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial. . . .

This court reviews de novo the district court's rulings on the scope of its authority to order discovery under Rule 16. *United States v. Hicks,* 103 F.3d 837, 840 (9th Cir. 1996).

Rule 16 governs pretrial discovery and imposes on the government a continuing duty to disclose evidence "prior to or during trial." Fed.R.Crim.P. 16(c). Mikaelian did not move for discovery until February 1997, nine months after his guilty plea. The district court denied the discovery motion because the heroin was neither material to the preparation of Mikaelian's defense nor intended by the government for use at trial. [ER p. 347] *See United States v. Pervaz,* 118 F.3d 1, 9–10 (1st Cir.1997) (motion during suppression hearing to examine equipment under Rule 16(a)(1)(C) is too late; rule gives right to inspect objects prior to trial). Because Mikaelian pled guilty, however, there was no trial or formal defense. Not only was the motion untimely, as it was made nine months after the guilty plea, but Mikaelian stipulated to the amount of the heroin, and as stated below he has not made an adequate showing that testing would show such a low purity as to create a possible issue affecting his sentence. There is thus no evidence that the denial of the motion prejudiced him. *See Amlani,* 111 F.3d at 711 (no reversal for discovery violation unless district court abused its discretion and the error resulted in prejudice to substantial rights).

## C. *Downward departure*

■ Mikaelian argues that the relatively low purity of the heroin he distributed could be a basis for downward departure. On that assumption, he made a motion for a forensic chemist to test the drug and testify regarding its "impurity." The district court concluded that it was without legal authority to depart downward on the basis of the heroin's low purity. This court reviews the district court's departure decision for an abuse of discretion. *United States v. Mendoza,* 121 F.3d 510, 513 (9th Cir.1997) (citing *Koon v. United States,* 518 U.S. 81, 99, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996)). "Whether a factor is a permissible ground for departure is a matter of law, although '[l]ittle turns on whether . . . we label review of this particu-

lar question an abuse of discretion or *de novo*, for an abuse of discretion standard does not mean a mistake of law is beyond appellate correction.'" *United States v. Sanchez–Rodriguez*, 161 F.3d 556, 559 (9th Cir.1998) (en banc) (quoting *Koon*, 518 U.S. at 100, 116 S.Ct. 2035)·(brackets and ellipsis in original).

■ Mikaelian urges us to conclude that just as the high purity of a drug may justify an upward departure, a low purity may justify a downward departure. In the alternative, he contends that such a departure is possible when the extremely low purity of the drug constitutes "a mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b); *Koon*, 518 U.S. at 109, 116 S.Ct. 2035 (if the Commission did not categorically proscribe a factor for downward departure, a sentencing court may depart downward if "the factor, as occurring in the particular circumstances, takes the case outside the heartland of the applicable Guideline"); *Sanchez–Rodriguez*, 161 F.3d at 560 ("we cannot categorically forbid a district court from departing downward on any basis except for those specifically proscribed in the Guidelines"). We agree that the low purity of heroin involved in a crime cannot be categorically excluded as a basis for a downward departure.

In this case, however, Mikaelian has not established that a downward departure was warranted. Mikaelian has filed to allege that the heroin he distributed was of such low purity that it took his case outside the "heartland" of the applicable Guideline. Although he characterizes four percent heroin as "very *im* pure" or "junk" heroin, he pre-

sented no evidence that heroin of four percent purity is unusually impure, nor did he even indicate that the expert witness he requested would so testify. *See United States v. Martinez–Duran*, 927 F.2d 453, 456 (9th Cir.1991) (upward departure for high purity of heroin not justified when no ·evidence adduced as to what level of purity is unusually high).[2]

### D. *Mikaelian's mental condition*

■ The district court declined to exercise its discretion to depart downward based on Mikaelian's mental condition, including his severe headaches. Such a discretionary refusal to depart is not reviewable on appeal. *United States v. Webster*, 108 F.3d 1156, 1158 (9th Cir.1997).

## IV. RESTITUTION ORDER

Mikaelian contends it was an abuse of discretion to order him to pay restitution, jointly and severally with his codefendants, in the amount of $2,435,280.

■ This court reviews a restitution order for an abuse of discretion, so long as it is within the statutory framework. *United States v. Nash*, 115 F.3d 1431, 1441–42 (9th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1054, 140 L.Ed.2d 117 (1998). Under the Victim and Witness Protection Act ("VWPA"), the court shall consider the losses to the victims, the defendant's financial resources, the financial needs and earning ability of the defendant and his dependents, and other factors the court deems appropriate. 18 U.S.C. § 3664(a).

■ The court awarding restitution is not required to make findings of fact; the record must merely reflect that the court had at its

---

**2.** Cases addressing the purity of "street" heroin (as was sold in this case) have identified the drug's purity as varying from two to ten percent, and fail to support Mikaelian's assertion that four percent heroin is unusually impure. *See, e.g., United States v. Gibson*, 105 F.3d 1229, 1235 (8th Cir.1997) (expert testimony that lower level dealers would sell diluted 2% to 7% pure heroin to users); *United States v. Edwards*, 77 F.3d 968, 976 (7th Cir.1996) (expert testimony that pure heroin usually diluted before street sale, in this case to less than 5% purity); *United States v. Cardenas*, 9 F.3d 1139, 1145 (5th Cir.1993) (ex-

pert testimony that "user" heroin is of less than 10% purity); *United States v. McMillen*, 8 F.3d 1246, 1252 n. 2 (7th Cir.1993) (evidence that "user strength" heroin was 7%–11%); *United States v. Smiley*, 997 F.2d 475, 477 (8th Cir.1993) (expert testimony that most heroin in Kansas City had purity levels from 2%–4%); *United States v. Pugliese*, 712 F.2d 1574, 1580 (2d Cir. 1983) (expert testimony ·that purity of heroin in New York City might be 2%–3%); *but see United States v. Ihegworo*, 959 F.2d 26, 28 (5th Cir.1992) (court stated that average purity of street heroin is 13%–20%).

disposal information bearing on the requirements of § 3664. *United States v. Mills*, 991 F.2d 609, 611 (9th Cir.1993). "There must also be some indication that the judge gave thought to the relevant information." *Id.* Although the VWPA "does not prohibit a sentencing court from imposing a restitutionary sentence upon a defendant who is indigent at the time of sentencing," *United States v. Angelica*, 951 F.2d 1007, 1009 (9th Cir.1991) (quotation omitted), " 'at the time restitution is ordered the record must reflect some evidence the defendant may be able to pay restitution in the amount ordered in the future.' " *United States v. Stoddard*, 150 F.3d 1140, 1147 (9th Cir.1998) (quoting *United States v. Ramilo*, 986 F.2d 333, 336 (9th Cir.1993)).

 In this case, the district court had before it the presentence report, which included an affidavit from Mikaelian providing financial information. The PSR concluded "it appears as if the defendant does not have the ability to pay restitution." At the sentencing hearing, however, the government submitted evidence of other assets and earlier large financial transactions not identified in Mikaelian's affidavit. Mikaelian continued to assert he did not have the present or future ability to pay. After discussion, the court ordered restitution of $2,435,280, the amount of the taxes evaded, jointly and severally with the other defendants. The court added: "And if the probation officer were to determine that Mr. Mikaelian does not have the ability to make such restitution, the probation officer may make such adjustments in the restitution amount as is appropriate under the circumstances."

We conclude that the district court abused its discretion. There is no indication in the record that the court considered Mikaelian's *future* ability to pay any significant amount of restitution. Rather than stating in any way that the financial information before the court showed that Mikaelian had any future possibility of paying even part of the two-and-a-half million dollar award, the court indicated that the probation officer could adjust the amount if the officer concluded that Mikaelian did not have the ability to pay.

The district court may not delegate to the probation officer the determination of the amount of restitution owed. "[T]he amount of restitution ordered must be judicially established.... Our decisions, as well as the very language of the VWPA, squarely place the responsibility for determining that amount on the sentencing court." *United States v. Barany*, 884 F.2d 1255, 1260 (9th Cir.1989) (court may not vest discretion to determine amount and nature of restitution in the probation officer) (quotations omitted).

We therefore vacate the district court's order of restitution. On remand, the district judge assigned to the case shall reconsider the restitution award with attention to Mikaelian's future ability to pay.

## CONCLUSION

We vacate Mikaelian's sentence and remand his case for resentencing before a different district judge. On remand, the government shall provide the debriefing report to the defense, and shall not file with the court the paralegal declaration previously submitted *in camera* to the district court, unless the material is served on the defense. If the government does not move for a departure for substantial assistance, the court shall make a factual determination whether the failure to make such a motion was in bad faith.

The district court shall also determine the amount of restitution owed, taking into account Mikaelian's future ability to pay.

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED.**