**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

<table>
<tr>
<td>

UNITED STATES OF AMERICA,
   *Plaintiff-Appellee*,

v.

STEVEN BOYLE YAMASHIRO,
   *Defendant-Appellant*.

</td>
<td>

No. 12-50608

D.C. No.
2:11-CR-217-
ODW-1

OPINION

</td>
</tr>
</table>

Appeal from the United States District Court
for the Central District of California
Otis D. Wright, II, District Judge, Presiding

Argued and Submitted
December 9, 2014—Pasadena, California

Filed June 12, 2015

Before: Barry G. Silverman, Carlos T. Bea, Circuit Judges,
and Robert Holmes Bell, District Judge.[*]

Opinion by Judge Bell;
Partial Concurrence and Partial Dissent by Judge Bea

---

[*] The Honorable Robert Holmes Bell, District Judge for the U.S. District
Court for the Western District of Michigan, sitting by designation.

**SUMMARY**[**]

---

**Criminal Law**

The panel affirmed a conviction for wire fraud and money laundering, vacated the sentence, and remanded for resentencing before a different judge.

The panel held that the defendant's Sixth Amendment right to counsel was violated by the district court's decision to proceed with victim allocution in the absence of trial counsel during a portion of the defendant's critical sentencing stage. The panel held that the denial of counsel was structural error, that the error was complete when the right to counsel was denied, and that no additional showing of prejudice was required.

The panel held that the district court did not abuse its discretion in denying the defendant's motion to withdraw his guilty plea.

The panel concluded that reassignment to a different judge for resentencing is advisable to preserve the appearance of justice because the trial court committed structural error by proceeding with victim allocution while defense counsel was not present, and because the victim's statements were highly significant in the judge's sentencing consideration.

Concurring in part and dissenting in part, Judge Bea agreed with the majority that the denial of the defendant's

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

motion to withdraw his guilty plea should be affirmed, but disagreed that the district court committed plain error when it permitted one victim to allocute without the defendant's preferred counsel present.

## COUNSEL

Sean K. Kennedy, Federal Public Defender, and Gail Ivens, Deputy Federal Public Defender, Los Angeles, California, for Defendant-Appellant.

André Birotte, Jr., United States Attorney, Robert E. Dugdale and Jamie A. Lang, Assistant United States Attorneys, Los Angeles, California, for Plaintiff-Appellee.

## OPINION

BELL, District Judge:

Steven Yamashiro appeals his conviction and sentence for wire fraud and money laundering. We affirm his conviction, but vacate his sentence as a result of structural error and remand for resentencing before a different judge.

## I. Factual Background

From December 2005 to December 2007, Steven Yamashiro, a registered investment advisor and securities agent, engaged in a scheme to defraud his clients. The scheme involved more than ten victims and more than $3.5 million. Yamashiro was charged with eight counts of wire fraud in violation of 18 U.S.C. § 1343, two counts of money

laundering in violation of 18 U.S.C. § 1957, and two asset forfeiture claims pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982.  On December 27, 2011, Yamashiro pleaded guilty to two counts of wire fraud (Counts 1 & 6) and one count of money laundering (Count 10).  Yamashiro waived any right to appeal his convictions, except a claim based on an involuntary plea.  He also waived his right to appeal a sentence of 78 months or less.

The Probation Office calculated a total offense level of 26 and a criminal history category of I, resulting in a Sentencing Guidelines range of 63–78 months of imprisonment.  The Probation Office recommended a low-end sentence of 63 months.

On September 17, 2012, the day scheduled for sentencing, Yamashiro requested a substitution of counsel.  The district court granted the motion, set a new date for sentencing, and released Yamashiro's original counsel from further representation.  Although Yamashiro's newly substituted counsel had not yet arrived in court, the court agreed to listen to allocution from the victim witnesses who were in attendance so that their travel to court would not be in vain. The court requested Yamashiro's original counsel who had just been released to stay for the victim allocution until Yamashiro's newly substituted counsel arrived, but advised him that he did not have to do anything.

Glenn Hale, the first victim witness, described his relationship of trust with Yamashiro, and the devastating consequences the fraud had on his life.  He requested that the court impose the maximum penalty.  After Hale completed his allocution, Yamashiro's new counsel arrived in court and

was present during the allocution of the next five victim witnesses.

Three months later, at the start of the second phase of the sentencing hearing, the district court denied defense counsel's letter request for withdrawal of the plea. The court heard additional allocution from victim witnesses, and then sentenced Yamashiro to 63 months on each of the three counts, to run consecutively, for a total sentence of 189 months in prison and restitution of $3,911,457.

## II.  Jurisdiction

This Court has jurisdiction under 28 U.S.C. § 1291.

## III.  Discussion

### A.  Denial of Counsel

Yamashiro contends that the district court committed plain error when it allowed victim allocution to proceed without counsel present.  Yamashiro did not object to this alleged error before the trial court.  Accordingly, we review for plain error.  Fed. R. Crim. P. 52(b).

In *United States v. Olano*, 507 U.S. 725, (1993), the United States Supreme Court identified four steps or prongs to plain-error review under Rule 52(b).  *Id.* at 732–36.  We have summarized the *Olano* test as follows:

> (1) there must be an error or defect . . . that has not been . . . affirmatively waived by the appellant (2) the legal error must be clear or obvious, rather than subject to reasonable

dispute; (3) the error must have affected the appellant's substantial rights; and (4) if the above three prongs are satisfied, the court of appeals has the discretion to remedy the error . . . if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*United States v. Mageno*, 762 F.3d 933, 940 (9th Cir. 2014) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009) (internal quotation marks omitted)).

The alleged error in this case concerns the denial of the right to counsel. The Sixth Amendment right to counsel attaches at all critical stages of a criminal prosecution. *Hovey v. Ayers*, 458 F.3d 892, 901 (9th Cir. 2006) (citing *United States v. Wade*, 388 U.S. 218, 224 (1967)). "A critical stage is any 'stage of a criminal proceeding where substantial rights of a criminal accused may be affected.'" *Id.* (quoting *Mempa v. Rhay*, 389 U.S. 128, 134 (1967)). It has long been understood that sentencing is a "critical stage" at which a defendant is entitled to counsel. *United States v. Leonti*, 326 F.3d 1111, 1117 (9th Cir. 2003) (citing *Gardner v. Florida*, 430 U.S. 349, 358 (1977)); *see also Mempa*, 389 U.S. at 136-37 (holding that a deferred sentencing hearing is a critical stage despite the limited discretion afforded the sentencing judge).

While conceding that sentencing is a critical phase and that victim Hale's allocution occurred during a sentencing hearing, the government nevertheless contends that victim allocution is not a critical stage because crime victims have a nearly unfettered right to be heard at sentencing under the Crime Victims' Rights Act ("CVRA"), 18 U.S.C.

§ 3771(a)(4), and are not subject to cross-examination or other "trial-like confrontations."

"[T]he essence of a 'critical stage' is not its formal resemblance to a trial, but the adversary nature of the proceeding, combined with the possibility that a defendant will be prejudiced in some significant way by the absence of counsel." *Leonti*, 326 F.3d at 1117. The CVRA provides victims the right to be heard at sentencings. 18 U.S.C. § 3771(a)(4). Among the purposes of the CVRA is to make victims "full participants" in the sentencing process and to "ensure that the district court doesn't discount the impact of the crime on the victims." *Kenna v. U.S. Dist. Court*, 435 F.3d 1011, 1016 (9th Cir. 2006). Victim allocution provides the court with information it may use in sentencing the defendant. Because the victim statements may influence the resulting sentence, substantial rights of the defendant may be affected. Victim allocution is thus part of the adversarial sentencing procedure.

There is also a possibility of significant prejudice if counsel is not present to hear what was said, how it was said, and how it was received by the court. This case provides a particularly clear illustration of the critical nature of victim allocution. Hale's testimony was compelling, and the trial court readily acknowledged that he was influenced by the victims' allocution because it increased his understanding of the human impact of Yamashiro's conduct.

Yamashiro's Sixth Amendment right to counsel was violated by the court's decision to proceed with victim allocution in the absence of trial counsel during a portion of Yamashiro's critical sentencing stage. The denial of counsel is error that is not subject to reasonable dispute, and

Yamashiro did not affirmatively waive his right to counsel at this critical stage. Accordingly, this clear and obvious error satisfies the first two prongs of the *Olano* plain-error test.

The government argues that even if the proceeding violated Yamashiro's right to counsel, any violation was trivial, and amounts to harmless error in light of the fact that only one victim spoke, his allocution was not subject to cross-examination, his statement was recorded, and he appeared again at the continuation of Yamashiro's sentencing.

Most trial errors are subject to harmless-error analysis. However, certain errors fall within the class of "structural defects in the constitution of the trial mechanism" that "defy analysis by 'harmless-error' standards." *Arizona v. Fulminante*, 499 U.S. 279, 309 (1991). "[T]he Sixth Amendment right to counsel is among those 'constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error.'" *United States v. Hamilton*, 391 F.3d 1066, 1070 (9th Cir. 2004) (quoting *Chapman v. California*, 386 U.S. 18, 23 & n.5 (1967)). "[T]he absence of counsel during a critical stage of a criminal proceeding is precisely the type of 'structural defect' to which no harmless-error analysis can be applied." 391 F.3d at 1070 (citation omitted).

Yamashiro was not represented by anyone when the allocution phase of his sentencing proceeding began. His counsel had been dismissed, and his new counsel had not yet arrived. We have held that the denial of the right to counsel at sentencing is structural error. *Robinson v. Ignacio*, 360 F.3d 1044, 1061 (9th Cir. 2004) ("Because of the fundamental importance of the right to counsel [at

sentencing], Robinson need not prove prejudice and a harmless error analysis is not required.").[1]

We conclude that the denial of counsel during a portion of the allocution phase of the sentencing proceeding was structural error, that the error was complete when the right to counsel was denied, and that no additional showing of prejudice was required.

In most cases, the requirement of the plain error test that an error "affect substantial rights" means that the error must have been prejudicial, i.e., that it must have affected the outcome of the district court proceedings. *United States v. Gadson*, 763 F.3d 1189, 1231 (9th Cir. 2014). The requirement is different, however, in cases where there has been a finding of structural error because "a finding of structural error satisfies the third prong of the *Olano* plain-error test." *United States v. Recio*, 371 F.3d 1093, 1101 (9th Cir. 2004). We accordingly conclude that the error affected Yamashiro's substantial rights. We are also satisfied that the denial of counsel seriously affected the fairness, integrity or public reputation of the judicial proceedings. Accordingly, Yamashiro's sentence will be vacated and the case will be remanded for resentencing. Because we are vacating Yamashiro's sentence for structural error, we do not reach the question of whether the sentence was procedurally and/or substantively unreasonable.

---

[1] In *United States v. Walters*, 309 F.3d 589, 593 (9th Cir. 2002), we held denial of counsel of choice at sentencing was not structural error and was subject to harmless error analysis. 309 F.3d at 592–93. *Walters* is distinguishable because it involved denial of counsel "of choice," rather than denial of counsel altogether.

## B. Motion to Withdraw Guilty Plea

Yamashiro contends that the district court abused its discretion by failing to rule on his motion to withdraw his guilty plea. He accordingly requests that his conviction be reversed and remanded for consideration of the motion.

Contrary to Yamashiro's argument, the district court did deny his motion to withdraw his guilty plea. Denial of that motion was not error. "The decision whether to permit the withdrawal of a plea 'is solely within the discretion of the district court.'" *United States v. Showalter*, 569 F.3d 1150, 1154 (9th Cir. 2009) (quoting *United States v. Nostratis*, 321 F.3d 1206, 1208 (9th Cir. 2003)). Accordingly, we review a district court's denial of a motion to withdraw a guilty plea for abuse of discretion. *United States v. Ensminger*, 567 F.3d 587, 590 (9th Cir. 2009). Under this standard, we review the district court's findings of fact for clear error. *United States v. McTiernan*, 546 F.3d 1160, 1166 (9th Cir. 2008).

A defendant may withdraw a plea of guilty before sentencing if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). Although the defendant has the burden of demonstrating a fair and just reason, *United States v. Davis*, 428 F.3d 802, 805 (9th Cir. 2005), the "fair and just" standard is applied liberally. *United States v. Bonilla*, 637 F.3d 980, 983 (9th Cir. 2011). "Fair and just" reasons for withdrawal include inadequate Rule 11 plea colloquies, newly discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that did not exist when the defendant entered his plea. *McTiernan*, 546 F.3d at 1167 (citing *Davis*, 428 F.3d at 805). Erroneous or inadequate legal advice may

also constitute a fair and just reason for withdrawal of a plea. *Bonilla*, 637 F.3d at 983 (citing *McTiernan*, 546 F.3d at 1167). A defendant who moves to withdraw a guilty plea "is not required to show that he would not have pled, but only that the proper legal advice of which he was deprived 'could have at least plausibly motivated a reasonable person in [the defendant's] position not to have pled guilty.'" *Bonilla*, 637 F.3d at 983 (quoting *United States v. Garcia*, 401 F.3d 1008, 1011–12 (9th Cir. 2005)).

The district court did not abuse its discretion in denying Yamashiro's motion to withdraw his guilty plea. Yamashiro's testimony during the plea hearing directly contradicted his contention that he did not enter his plea voluntarily and knowingly. "Statements made by a defendant during a guilty plea hearing carry a strong presumption of veracity in subsequent proceedings attacking the plea." *United States v. Ross*, 511 F.3d 1233, 1236 (9th Cir. 2008). Yamashiro has not presented evidence to rebut the presumption that his statements at his plea were voluntary, nor has he presented evidence to suggest that it was plausible that he would have chosen to go to trial had he been given proper legal advice. Moreover, Yamashiro did not raise the issue of the voluntariness of his plea until almost a year after his plea, on the eve of sentencing. Yamashiro did not meet his burden of demonstrating a fair and just reason for withdrawing his plea. Accordingly, the district court did not abuse its discretion in denying Yamashiro's motion to withdraw his guilty plea.

## C. Reassignment

Yamashiro requests that on remand his case be reassigned to a different district judge for resentencing.

"'Although we generally remand for resentencing to the original district judge, we remand to a different judge if there are unusual circumstances.'"      *United States v. Rivera*, 682 F.3d 1223, 1237 (9th Cir. 2012) (quoting *United States v. Quach*, 302 F.3d 1096, 1103 (9th Cir. 2002)).      To determine whether there are unusual circumstances that would warrant reassignment, we consider the following three factors:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving appearance of fairness.

*Id.* (quoting *Quach*, 302 F.3d at 1103).   "The first two of these factors are of equal importance, and a finding of one of them would support a remand to a different judge."   *Id.* (citation and internal quotation marks omitted).   The "unusual circumstances" standard "does not require a showing of 'actual bias on the part of the judge who first heard the case.'" *Krechman v. Cnty. of Riverside*, 723 F.3d 1104, 1111 (9th Cir. 2013) (quoting *Mendez v. Cnty. of San Bernardino*, 540 F.3d 1109, 1133 (9th Cir. 2008)).

Because the trial court committed structural error by proceeding with victim allocution while defense counsel was not present, and because the victim's statements were highly

significant in the judge's sentencing consideration, reassignment is advisable to preserve the appearance of justice. *See United States v. Noushfar*, 78 F.3d 1442, 1448 (9th Cir. 1996) (remanding with instructions to reassign the case where reversal was based on structural error). In *United States v. Mikaelian*, 168 F.3d 380 (9th Cir. 1999), we held that reassignment to a different judge on remand for sentencing was advisable where the original judge reviewed *in camera* documents which could be relevant to sentencing arguments. *Id.* at 388. Here, as in *Mikaelian*, the district judge may have a difficult time putting out of his mind victim allocution that came in when defense counsel was not present. Second, the appearance of justice would be served by having another judge, who has not heard the victim allocution that came in while defendant was not represented, conduct the resentencing. Third, although reassignment will entail some duplication of effort, this case did not go to trial and accordingly does not present a new judge with a voluminous trial record to review. *See id.*

Because of the unusual circumstances in this case, we will remand with instructions that this case be reassigned to a different judge for resentencing.

## IV. Conclusion

We affirm Yamashiro's conviction, vacate his sentence for structural error, and remand with instructions that this case be reassigned to a different judge for resentencing.

**CONVICTION AFFIRMED, SENTENCE VACATED and REMANDED.**

BEA, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that we should affirm the district court's decision to deny Steven Yamashiro's motion to withdraw his guilty plea. But I disagree that the district court committed "plain error" when it permitted one victim to allocute without Yamashiro's preferred counsel present.

The standard of review matters. We must apply plain-error review when, as here, there was no objection lodged in the district court to the claimed error. *See Puckett v. United States*, 556 U.S. 129, 135 (2009). The Supreme Court has explained the plain-error standard is a "limitation on appellate authority" that permits reversal in a small set of circumstances where the defendant forfeits his right to contest the district court's decision but that forfeiture is excused on appeal. *See United States v. Olano*, 507 U.S. 725, 732–33 (1993). The rule is meant to correct "only 'particularly egregious errors' . . . solely in those circumstances in which a miscarriage of justice would otherwise result." *United States v. Young*, 470 U.S. 1, 15 (1985) (citations omitted). For the life of me, I cannot see how the absence of counsel for a single victim's allocution rises to that level, especially when counsel had three months either to review a transcript of the allocution or to move to strike the allocution prior to sentencing.

I.

We "cannot properly evaluate a case [under plain-error review] except by viewing such a claim against the entire record." *Young*, 470 U.S. at 16. In that regard, we are not supposed "to extract from episodes in isolation abstract questions of evidence and procedure. To turn a criminal trial

into a quest for error no more promotes the ends of justice than to acquiesce in low standards of criminal prosecution." *Id.* (quoting *Johnson v. United States*, 318 U.S. 189, 202 (1943) (Frankfurter, J., concurring)). For those reasons, a full recitation of the facts is necessary.

Yamashiro pleaded guilty in December 2011 to two counts of wire fraud and one count of money laundering arising out of his sham investment scheme. At the commencement of the sentencing hearing on September 17, 2012, Yamashiro's counsel, Mark Hathaway, for the first time notified the court that Yamashiro no longer wanted Hathaway to represent him.[1] Hathaway presented the court with a proposed consent order to substitute Jack Conway as Yamashiro's defense counsel. The district court expressed frustration with the lateness of the request to substitute counsel, it coming nine months after Yamashiro pleaded guilty and on the day of sentencing; further, the Court noted that several victims had travelled to the sentencing hearing specifically to allocute. The district judge found Yamashiro's request was a "delaying tactic" that was "solely for the purpose of creating a continuance and causing inconvenience to the parties, to the victims, and to the court." Hathaway notified the district judge that Conway was absent because he was at a hearing at another courthouse. The district judge stated he would continue the hearing for 30 days.

Before court adjourned, the prosecutor asked if the victims could allocute. The district judge agreed: "I do not want this to be a wasted trip for any of the victims. Let's do this. I would like to hear from as many as wish to speak."

---

[1] Notwithstanding Yamashiro and his new counsel, Jack Conway, had consented to the substitution a week earlier.

The district judge then excused Hathaway. After the government noted it may be improper to permit the victims to allocute without counsel present, the district court decided in an "exercise of caution" to have Hathaway remain with Yamashiro during the allocutions. The district judge told Hathaway, "You don't have to do anything. I just want to have a full house here while we listen to the victims." The first victim, Glenn Hale, took the stand and explained how Yamashiro duped him and his wife into investing with Yamashiro, the effect the lost investments had on his life and marriage, and his wish that Yamashiro be imprisoned. Conway arrived after Hale's allocution. The district court then excused Hathaway, who conferred with Conway off the record before exiting the courtroom. Conway did not seek a recess for purposes of conferring with his client, Yamashiro, with respect to Hale's allocution. Conway did not ask for a read-back of Hale's allocution. The remaining victims allocuted with Conway present. However, instead of sentencing Yamashiro, the district court continued the sentencing hearing to give Conway the opportunity to get up to speed on the case.

The continued sentencing hearing was ultimately held three months later. During that time, Conway could have ordered and reviewed a transcript of Hale's allocution, though apparently he did not do so.[2] At the sentencing hearing, Hale allocuted again, though his allocution was shorter, and he repeated his wish that Yamashiro be imprisoned for his crimes. At the end of the hearing, the district judge sentenced Yamashiro to 189 months imprisonment.

---

[2] During oral argument, Yamashiro's appellate counsel stated Conway could have obtained a transcript of Hale's allocution but did not do so.

II.

Neither Hathaway nor Conway ever filed a motion to strike Hale's first allocution or otherwise objected to that allocution. We therefore review for plain error. *Puckett*, 556 U.S. at 135. That review has four prongs. "First, there must be an error or defect." *Id*. "Second, the legal error must be clear or obvious, rather than subject to reasonable dispute." *Id.* "Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it 'affected the outcome of the district court proceedings.'" *Id.* (citation omitted).[3] "Fourth and finally, if the above three prongs are satisfied, the court of appeals has the *discretion* to remedy the error—discretion which ought to be exercised only if the error 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (emphasis in original) (citation omitted).

The majority flatly states that Yamashiro satisfies the fourth element in a single line: "We are also satisfied that the denial of counsel seriously affected the fairness, integrity or public reputation of the judicial proceedings." I cannot agree for several reasons. To start, it is not even clear the district court denied Yamashiro his right to counsel during Hale's allocution because Hathaway remained with Yamashiro during that allocution. To that end, the district court found

---

[3] We have held the third prong is similar to the harmless-error analysis and is satisfied when, as here, the alleged error is structural. *See United States v. Collins*, 684 F.3d 873, 881 (9th Cir. 2012) ("[I]f the plain error was a structural one, the existence of prejudice is generally presumed."); *Robinson v. Ignacio*, 360 F.3d 1044, 1061 (9th Cir. 2004) (explaining the deprivation of counsel at sentencing is structural error).

Yamashiro's request to change counsel from Hathaway to Conway was a "delaying tactic" that was "solely for the purpose of creating a continuance and causing an inconvenience to the parties, to the victims and to the court." Because of that finding, it is likely the district court would not have erred if it denied Yamashiro's request for new counsel and proceeded immediately to sentencing with Hathaway as counsel. "The Sixth Amendment grants criminal defendants a *qualified* constitutional right to hire counsel of their choice but the right is *qualified* in that it may be abridged to serve some 'compelling purpose.'" *United States v. Walters*, 309 F.3d 589, 592 (9th Cir. 2002) (emphasis added). A defendant's exercise of the right cannot "unduly hinder the fair, efficient and orderly administration of justice." *Id.*; *see also United States v. Maness*, 566 F.3d 894, 896 (9th Cir. 2009) (exercising the Sixth Amendment right to counsel cannot have the "purpose of delay."). Had the district court denied Yamashiro's request, he simply would have prevented Yamashiro from "unduly hinder[ing] the fair, efficient and orderly administration of justice," which is a valid reason for denying such a request. *Walters*, 309 F.3d at 592; *see also United States v. D'Amore*, 56 F.3d 1202, 1204 (9th Cir. 1995) ("[A] compelling purpose may be found when granting the motion would lead to a delay in the proceedings and the Government's interest in the prompt and efficient administration of justice outweighs the defendant's need for new counsel to adequately defend himself."), *overruled on other grounds by United States v. Garrett*, 179 F.3d 1143 (9th Cir. 1999) (en banc).

Unfortunately, the record is unclear on whether the district court granted Yamashiro's motion immediately, and relieved Hathaway permanently, or waited to grant the motion and to relieve Hathaway until Conway arrived. The

district judge stated, "I have the substitution, and I will sign it. I am going to relieve [Hathaway] as counsel of record." The district judge then relieved Hathaway. But in his next breath the judge asked Hathaway to remain so there was a "full house here while we listen to the victims." And Hathaway stayed with Yamashiro during Hale's allocution. The district court excused Hathaway only after Conway arrived. At that point, the district judge reiterated that he wanted counsel with Yamashiro during each allocution: "I have already relieved Mr. Hathaway, but we are hearing from the various victims of your new client's numerous schemes. And I wanted in an exercise of an abundance of caution, I wanted counsel to be seated with him." Conway responded, "Yes, of course," after which the judge told Hathaway he could leave. The better course would have been for the district court either to deny or grant Yamashiro's motion or otherwise make clear whether Hathaway was acting as Yamashiro's counsel until Conway arrived. The district judge's statements instead (unintentionally) obfuscated the issue. In any event, it is undisputed that Hathaway was present and able to observe Hale's allocution, which undercuts the argument that the error "seriously affects the fairness, integrity or public reputation of judicial proceedings."[4] *Puckett*, 556 U.S. at 135 (citation omitted).

Further, there is nothing Conway could have done to alter Hale's allocution had he been present because defense

---

[4] The district judge did tell Hathaway, "You don't have to do anything." But the court's statement was likely a recognition that defense counsel has no meaningful role to play while a victim allocutes, as I explain below, rather than a formal statement that Hathaway was not to continue serving as Yamashiro's counsel. Indeed, when Conway arrived, the district court likewise instructed him to "sit and listen."

counsel has virtually no role to play during victim allocutions. The Crimes' Victim Rights Act ("CVRA") gives victims the "right to be reasonably heard at any public proceeding in the district court involving . . . sentencing." *Kenna v. U.S. Dist. Court for C.D. Cal.*, 435 F.3d 1011, 1016 (9th Cir. 2006) (quoting 18 U.S.C. § 3771(a)(4)). A "district court *must* hear from the victims, if they choose to speak" because the "CVRA gives victims the right to confront every defendant who has wronged them." *Id.* at 1016–17 (emphasis added). The CVRA does not limit the substance of victims' allocutions, and even grants victims the right to file a mandamus action against the district court to enforce their right to be heard. *See id.*; 18 U.S.C. § 3771(d)(3). The Federal Rules of Criminal Procedure likewise require that any victim who wishes to allocute be given the opportunity to do so. Fed. R. Crim. P. 32(i)(4)(B) ("Before imposing sentence, the court must address any victim of the crime who is present at sentencing and must permit the victim to be reasonably heard."). And all information is relevant to sentencing: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. For these reasons, Hale's allocution proceeded in exactly the same way as it would have had Conway been present.

Finally, though Conway missed Hale's allocution, he had plenty of time to learn the substance of that allocution prior to sentencing. After the remaining victims allocuted in Conway's presence, the district court continued the sentencing, which ultimately occurred three months later. During that delay, Conway could have ordered and reviewed a transcript of Hale's allocution and incorporated its

substance into his sentencing argument. True, Conway lost the opportunity to be present for Hale's allocution; he could not consult with Yamashiro during the allocution or observe the effect, if any, Hale's allocution may have had on the district judge. But that is no different than when a victim chooses to submit victim-impact letters instead of appearing in person. *See United States v. Burkholder*, 590 F.3d 1071, 1075 (9th Cir. 2010) (explaining a victim can be heard by "submitting a written impact statement describing the effects of a defendant's crime."). Conway's absence during Hale's first allocution is similar to counsel's absence when the judge reads letters from victims in chambers. And, in any event, Conway could have learned of Hale's demeanor and the district judge's reaction to Hale's allocution by speaking with Hathaway. If Conway could not reach Hathaway, Conway, of course, could have moved to strike Hale's allocution entirely; he never did.[5]

---

[5] I note that in similar circumstances we have found there was no error at all. *See United States v. Rice*, 776 F.3d 1021 (9th Cir. 2015). In *Rice*, the district court appointed the defendant, Shawn Rice, counsel at his arraignment, but Rice requested to represent himself, as was his right under the Sixth Amendment. *Id*. at 1023. The district court refused to conduct a *Faretta* hearing that day, and did not conduct the *Faretta* hearing and grant Rice's motion to proceed *pro se* until four months later. *Id*. at 1023–24. In the interim, Rice filed several *pro se* motions the district court struck because of a local rule that prohibits *pro se* filings from represented parties. *Id*. at 1024. After the district court granted Rice's request to proceed *pro se*, the district court permitted Rice to refile his previously stricken motions and Rice represented himself through trial. *Id*. On appeal, the panel explained "the district court should have taken up the self-representation request more expeditiously." *Id*. at 1025. But the panel found "no Sixth Amendment violation in this record as a whole" because the "district court reset the game clock [at the *Faretta* hearing], placing Rice in the same situation as would have obtained had the [] judge granted the *Faretta* motion at the . . . arraignment." *Id*.

## III.

In view of the facts of this case, I cannot see how the alleged error "'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *Puckett*, 556 U.S. at 135 (citation omitted). Yamashiro attempted to delay proceedings, had an attorney with him during the allocution, and his new attorney had the opportunity to review that allocution prior to sentencing. The error, to the extent there was one, does not meet the standard for reversal under plain-error review. At the very least, this is not a case where we should exercise *our discretion* to remedy the error below. *Id.*

I do not mean to imply the deprivation of counsel is a minor violation; it isn't minor. But we should correct errors on plain-error review "solely in those circumstances in which a miscarriage of justice would otherwise result." *Young*, 470 U.S. at 15 (citations omitted). This is no such case.

I respectfully dissent.

---

Though not directly on point, the rule in *Rice* is relevant here. Yamashiro contends his right to counsel was violated at the first hearing because Hale allocuted without Conway present. But the district judge continued the hearing, which permitted Conway to review Hale's allocution before the judge sentenced Yamashiro. Then, Hale allocuted a second time, this time before Conway. Conway was therefore able to incorporate Hale's first allocution into his sentencing argument just as if he were present at that allocution. In effect, the "district court reset the game clock"; Yamashiro was placed "in the same situation as would have obtained had" the court waited for Conway to arrive prior to Hale's first allocution. *Rice*, 776 F.3d at 1026.