**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Ronald HAMILTON, aka Seal**
**O, Defendant–Appellant.**

**No. 03–50179.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 5, 2004.

Filed Dec. 13, 2004.

---

Yolanda M. Barrera, Arcadia, CA, for the defendant-appellant.

Timothy J. Searight, Assistant U.S. Attorney, Los Angeles, CA, for the plaintiff-appellee. With him on the briefs was Tracy L. Wilkison, Assistant U.S. Attorney, Los Angeles, CA.

Before: B. FLETCHER, HANSEN,* and RAWLINSON, Circuit Judges.

* Honorable David R. Hansen, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

BETTY B. FLETCHER, Circuit Judge.

Defendant–Appellant Ronald Hamilton, who conditionally pled guilty to a federal drug trafficking offense, appeals his conviction. He argues that the district court's denial of his motion to suppress evidence obtained from a search of his car was in violation of his Sixth Amendment right to counsel, because at the suppression hearing the district court permitted the government to conduct redirect examination of the searching officer concerning Hamilton with neither Hamilton nor his counsel present. We agree and therefore reverse.

## I. BACKGROUND

This case arises out of a lengthy investigation by several law enforcement agencies of a large-scale cocaine trafficking operation affiliated with the "Santana Block Crips" in Compton, California.

On May 30, 2001, police intercepted conversations and observed activities suggesting that cocaine was delivered, in anticipation of a sale, to a "stash house" that had been under police surveillance for some time. The next day, investigators intercepted conversations that led them to believe five kilograms of cocaine would be delivered to the stash house. Police observed Hamilton arrive at the house, remove a briefcase from the trunk of his car, and enter the house. Another suspect, Suarez, arrived at the house and the police overheard (via a monitored telephone) Suarez argue with a third suspect inside the house, Staves, about not having cocaine. Suarez then left. After Staves received confirmation in coded language from Suarez suggesting that the cocaine was on its way, Hamilton backed out of the driveway, turned around, and backed into the driveway so that the trunk was no longer visible from the street. After Suarez returned, Staves came outside, greeted Hamilton, removed a backpack from Suarez's car, and re-entered the house. Minutes later, police observed Hamilton's car move in a manner consistent with something being loaded into the trunk.

Los Angeles Sheriff's Deputy Michael Caouette followed Hamilton as he drove away from the house. After seeing Hamilton change lanes without using a turn signal, Caouette pulled him over. Caouette searched Hamilton's car and found an empty briefcase and a briefcase containing ten kilograms of cocaine.

In a thirty-four-count indictment against Hamilton and twenty-five other individuals, the government charged Hamilton under 21 U.S.C. § 841(a)(1) with possession with intent to distribute cocaine. Hamilton moved to suppress evidence obtained from the search of his automobile.

The district court considered Hamilton's motion, along with suppression motions by several other defendants, at consolidated hearings held over the course of several days from January through March 2002. At the end of proceedings on January 15, the court suggested continuing the hearing to January 17. The following exchange occurred between the district court and Hamilton's counsel:

Counsel: I have a conflict.

Court: You don't need to be here.

Counsel: No, I just need to be here for the argument portion.

Court: We'll just finish the evidentiary portion.

Counsel: All right.

After a discussion with another lawyer about a possible conflict, the government's counsel stated, "I do have a brief redirect." According to Hamilton's counsel, she inferred from the conversation that the hearing would consist only of other defense counsels' cross-examinations of a witness whom she already had cross-examined,

and that any redirect would relate only to the other defendants.

On January 17, 2002, the hearing continued without Hamilton or his attorney present. During the hearing, four of the lawyers for the other defendants cross-examined Deputy Caouette (who had arrested three of the other defendants as well as Hamilton) about their respective cases. The government's counsel was then permitted to conduct a redirect examination of Caouette. About half of the redirect questions were devoted to Hamilton's case, and about half concerned another defendant. One defense lawyer conducted re-cross-examination of Caouette.

Following the January 17 hearing, the district court ordered transcripts of the suppression hearing to be prepared and counsel to file supplemental briefing on the suppression issues. Hamilton's counsel did so, and included as an exhibit to her supplemental brief the transcript of the redirect testimony of Deputy Caouette, taken when neither she nor the defendant was present. She raised no Sixth Amendment objection of any kind at that time, nor did she ask that the hearing be reconvened to permit her to re-cross the Deputy.

The district court denied Hamilton's motion to suppress. In its supplemental order justifying its decision, the district court found that the search of Hamilton was supported by probable cause based upon the intercepted telephone calls, the collective observations of law enforcement officials monitoring the stash house, and the totality of the circumstances.

Hamilton subsequently entered a conditional guilty plea—subject to his right to appeal the denial of the suppression motion—to possession with intent to distribute more than five kilograms of cocaine. The district court sentenced Hamilton to 70 months in prison, followed by five years of supervised release.

Hamilton filed this timely appeal. We have jurisdiction under 28 U.S.C. § 1291.

## II. ANALYSIS

Hamilton argues for the first time on appeal that the district court violated his rights under the Sixth Amendment by permitting the presentation of evidence against him during the suppression hearing while neither Hamilton nor his counsel was present.[1]

"An accused's right to be represented by counsel is a fundamental component of our criminal justice system." *United States v. Cronic,* 466 U.S. 648, 653, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). Criminal defense lawyers' "presence is essential because they are the means through which the other rights of the person on trial are secured." *Id.* "Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive for it affects his ability to assert any other rights he may have." *Id.* at 654, 104 S.Ct. 2039 (citation and internal quotation marks omitted).

---

1. Hamilton also claims that his own absence from the January 17 proceeding violated his rights under the Sixth Amendment's Confrontation Clause. On the merits of the suppression motion itself, Hamilton argues that the police did not have probable cause to search his vehicle because Hamilton's voice was not intercepted on the wiretap, Hamilton remained at the stash house longer than was the typical pattern, and Hamilton did not engage in counter-surveillance driving techniques when he left. As we find that the decision below must be reversed because the proceedings violated Hamilton's Sixth Amendment right to counsel, we need not consider whether reversal is warranted on other grounds.

■ Recognizing that the "Assistance [of Counsel]" guaranteed by the Sixth Amendment "would be less than meaningful if it were limited to the formal trial itself," *United States v. Ash*, 413 U.S. 300, 310, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973), the Supreme Court has made clear that criminal defendants have a right to counsel at all "critical stages" of criminal proceedings. *United States v. Wade*, 388 U.S. 218, 224, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). The "accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial." *Id.* at 226, 87 S.Ct. 1926. Thus counsel must be present during any critical stage, "absent an intelligent waiver" by the defendant. *Id.* at 237, 87 S.Ct. 1926 (quoting *Carnley v. Cochran*, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962)) (internal quotation marks omitted).

■ In deciding what qualifies as a "critical stage," courts have "recognized that the period from arraignment to trial [i]s 'perhaps the most critical period of the proceedings.'" *Wade*, 388 U.S. at 225, 87 S.Ct. 1926 (quoting *Powell v. Alabama*, 287 U.S. 45, 57, 53 S.Ct. 55, 77 L.Ed. 158 (1932)). Among the stages of a prosecution deemed "critical" for Sixth Amendment purposes are, for example, arraignments, *Hamilton v. Alabama*, 368 U.S. 52, 53–55, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961); post-indictment identification lineups, *Wade*, 388 U.S. at 236–37, 87 S.Ct. 1926; sentencing, *Mempa v. Rhay*, 389 U.S. 128, 137, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967); court-ordered psychiatric examinations to determine competency to stand trial and future dangerousness, *Estelle v. Smith*, 451 U.S. 454, 457–59, 470–71, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981); the decision whether to plead guilty, *United States v. Fuller*, 941 F.2d 993, 995 (9th Cir.1991),

and the process of plea bargaining and period of defendant's potential cooperation with the government, *United States v. Leonti*, 326 F.3d 1111, 1117 (9th Cir.2003). Most relevant for Hamilton's case, "[i]t is quite clear that a pretrial motion to suppress evidence is a critical stage of the prosecution requiring the presence of counsel for the accused," because in many cases the crucial issue is the admissibility of evidence found in the defendant's possession. *Olney v. United States*, 433 F.2d 161, 163 (9th Cir.1970) (internal quotation marks omitted).

■ Where counsel is absent during a critical stage, the defendant need not show prejudice. Rather, prejudice is presumed, "because the adversary process itself has become presumptively unreliable." *Roe v. Flores–Ortega*, 528 U.S. 470, 483, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000) (quoting *Cronic*, 466 U.S. at 659, 104 S.Ct. 2039) (quotation marks omitted).

■ Nor does harmless error analysis apply. Unlike ordinary trial errors, "structural defects in the constitution of the trial mechanism ... defy analysis by harmless-error standards." *Arizona v. Fulminante*, 499 U.S. 279, 309, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (internal quotation marks omitted). The Supreme Court has recognized that the Sixth Amendment right to counsel is among those "constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error," *Chapman v. California*, 386 U.S. 18, 23 & n. 5, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). As previously observed, the Sixth Amendment guarantee applies to all "critical" stages of the proceedings. *Wade*, 388 U.S. at 224, 87 S.Ct. 1926. Thus the absence of counsel during a critical stage of a criminal proceeding is precisely the type of "structural defect" to which no harmless-error analysis can be applied. Moreover, "[w]hen no counsel is

provided, or counsel is prevented from discharging his normal functions"—including the elementary function of being present throughout a critical stage of a prosecution—"the evil lies in what the attorney does not do, and is either not readily apparent on the record, or occurs at a time when no record is made. Thus an inquiry into a claim of harmless error here would require, unlike most cases, unguided speculation." *Cooper v. Fitzharris*, 586 F.2d 1325, 1332 (9th Cir.1978) (en banc) (quoting *Holloway v. Arkansas*, 435 U.S. 475, 491, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978)) (internal quotation marks omitted).

█ It follows from these principles that the hearing on Hamilton's motion to suppress (at least the portions of the consolidated proceedings in which evidence relating to Hamilton's case was heard) was a critical stage of his prosecution. Therefore, when the government attorney questioned the searching officer on redirect about Hamilton's case, his Sixth Amendment rights were implicated. The absence of Hamilton's attorney from the hearing on Hamilton's suppression motion constituted a denial of counsel at a critical stage of the proceeding. Absent an intelligent waiver by Hamilton of his right to counsel, the proceedings were tainted by a "structural defect" and harmless error analysis is therefore inapplicable.

█ The only question, then, is whether Hamilton intelligently waived his right to counsel. Waiver is the "intentional relinquishment or abandonment of a known right." *United States v. Perez*, 116 F.3d 840, 845 (9th Cir.1997) (en banc) (citations and internal quotation marks omitted); *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). "[C]ourts indulge every reasonable presumption against waiver of fundamental constitutional rights" and "do not presume acquiescence in the loss of fundamental

rights." *Carnley*, 369 U.S. at 514, 82 S.Ct. 884 (quoting *Johnson*, 304 U.S. at 464, 58 S.Ct. 1019) (internal quotation marks omitted). Therefore, "[p]resuming waiver from a silent record is impermissible." *Carnley*, 369 U.S. at 516, 82 S.Ct. 884.

No one asked Hamilton if he consented to his counsel's absence during the government's redirect examination of the searching officer in his case. There is nothing in the record to suggest that Hamilton intended to waive his right to counsel. Though Hamilton's counsel should have objected at the trial court level, through oversight or negligence she did not learn that testimony relating to Hamilton had been taken in her absence until she was preparing the appeal. Her quiescence does not amount to a knowing, intentional waiver on Hamilton's part. Therefore, Hamilton did not waive his right to counsel.

The government argues that the Sixth Amendment violation should be subject to "plain error" analysis because counsel did not object at the trial level. This argument is misplaced in the context of a structural defect: "We only review for plain error or assess whether an error is harmless when the error is not structural." *United States v. Sanchez–Cervantes*, 282 F.3d 664, 670 (9th Cir.2002). Because the violation of Hamilton's right to counsel was a structural defect, we do not require the defendant to show plain error.

### III. CONCLUSION

The taking of testimony against Hamilton during his suppression motion without his lawyer present violated his Sixth Amendment right to the assistance of counsel during critical stages of the proceedings. As this defect was structural, it cannot be harmless error. The conviction

and sentence are vacated. We remand for further proceedings.

**REVERSED and REMANDED.**