*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ALEXANDER JAMES HAUPT,

Defendant-Appellant.

UNPUBLISHED
April 25, 2024

No. 351593
Clare Circuit Court
LC No. 17-005731-FH

ON REMAND

Before: MURRAY, P.J., and M. J. KELLY and O'BRIEN, JJ.

PER CURIAM.

This matter is before us again on remand from the Supreme Court. See *People v Haupt*, 997 NW2d 175 (2023). In that order, the Court vacated those parts of our prior opinion dealing with defendant's right to counsel and disproportionate sentencing arguments, and remanded those issues for reconsideration in light of *People v Posey*, 512 Mich 317; 1 NW3d 101 (2023), and *People v King*, 512 Mich 1; 999 NW2d 670 (2023). *Haupt*, 997 NW2d 175. We affirm.

## I. SIXTH AMENDMENT RIGHT TO COUNSEL

With respect to defendant's Sixth Amendment right to counsel argument, we held in the prior opinion that defendant alleged a structural error, *People v Russell*, 471 Mich 182, 194 n 29; 684 NW2d 745 (2004), but that his failure to have counsel for two hearings over a two-month period, in violation of *People v Anderson*, 398 Mich 361, 367-368; 247 NW2d 857 (1976), and MCR 6.005(D), did not meet the fourth prong of the plain error test under *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999):

> The only period when defendant was without appointed counsel and proceeding *in propria persona* with advisory counsel was from the day appointed counsel was allowed to withdraw on June 10, 2019, until the day trial was to commence on July 23, 2019, when counsel was reappointed to represent defendant at trial. When appointed counsel was allowed to withdraw, defendant did not object to the withdrawal, but he also did not request to represent himself. The record

-1-

indicates that the trial court failed to comply with the substance of *Anderson* and MCR 6.005(D).

Nevertheless, even if the first three prongs of the plain error standard have been established, we conclude that reversal is not warranted under the fourth *Carines* prong. *Carines*, 460 Mich at 763-764. Defendant does not claim that he is actually innocent, and we are not convinced that the trial court's plain error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence. *Id*. "[T]he fourth *Carines* prong is meant to be applied on a case-specific and fact-intensive basis," and reversal is not justified if the "underlying purposes" of the right at issue have been alternatively upheld.

In *People v Kammeraad*, 307 Mich App 98, 130; 858 NW2d 490 (2014), this Court noted that "the right to assistance of counsel, cherished and fundamental though it may be, may not be put to service as a means of delaying or trifling with the court." *Kammeraad* recognized that a defendant may forfeit his right to counsel through "purposeful tactics and conduct that were employed to delay and frustrate the orderly process of the lower court's proceedings." *Id*. at 131, citing *State v Mee*, 756 SE2d 103, 114 (NC App, 2014). In other words, "willful conduct by a defendant that results in the absence of defense counsel constitutes a forfeiture of the right to counsel." *Kammeraad*, 307 Mich App at 131. Forfeiture is distinguishable from waiver. When a defendant forfeits the right to counsel, the court is not required to determine whether the defendant knowingly, understandingly, and voluntarily gave up his right. *Id*.

The defendant in *Kammeraad* forfeited his right to counsel by "refus[ing] to accept, recognize, or communicate with appointed counsel, . . . refus[ing] . . . self-representation, and . . . refus[ing] to otherwise participate in the proceedings." *Id*., at 131-132. Although in *Kammeraad* the defendant refused to get dressed and walk into the courtroom, requiring court officers to place him in a wheelchair, cover him up, and haul him in, *id*. at 112, we said that a forfeiture can be found on the basis of less outlandish conduct. A defendant might forfeit his right to counsel, for example, by refusing to accept appointed counsel while also failing " 'to retain counsel within a reasonable time,' " or by acting " 'abusive toward' " his retained or appointed counsel. *Id*. at 132, quoting *United States v McLeod*, 53 F3d 322, 325 (CA 11, 1995).

This Court also recognized "the hybrid situation of 'waiver by conduct,' " also known as " 'forfeiture with knowledge,' " "which combines elements of forfeiture and waiver." *Kammeraad*, 307 Mich App at 133-134, quoting *United States v Goldberg*, 67 F3d 1092, 1101 (CA 3, 1995). Waiver by conduct/forfeiture with knowledge occurs when "a defendant is warned that he or she will lose counsel if the defendant engages in dilatory tactics, with any misconduct thereafter being treated as an implied request for self-representation." *Kammeraad*, 307 Mich App at 133.

Here, the trial court seemingly found that defendant had given up his right to counsel through his conduct. Although the court should have (again) advised

defendant of the charges against him, the sentencing consequences he faced, and the various risks of representing himself before allowing appointed counsel to withdraw, this failure is not outcome-determinative given defendant's conduct. As the trial court noted, defendant's actions delayed the case for over two years, in part by repeatedly terminating the services of his retained and appointed counsel. He initially waived his preliminary examination in 2017 because the prosecution made a plea offer, but defendant continually rejected plea offers that his attorneys recommended he should take. Just one week before his previously adjourned October 2018 trial, defendant moved to remand to district court for a preliminary hearing. He made his counsel's work impossible. He refused to communicate with his retained counsel, and his lack of communication continued with his appointed counsel. He threatened his retained counsel's professional license, while he accused his appointed attorney of lying and colluding with the prosecutor's office.

During the less than two months that defendant represented himself with advisory counsel, two hearings took place: (1) a final pretrial hearing and (2) a hearing on defendant's motion to suppress evidence and motion to dismiss, and on the prosecutor's motion to use AM's preliminary examination testimony at trial. Consistent with his demonstrated lack of communication throughout the case, defendant did not reach out to advisory counsel for any advice or counsel during this time. Under these circumstances, the trial court did not violate defendant's constitutional right to counsel at a critical stage of the proceeding. Defendant has failed to show plain error. [*People v Haupt*, unpublished per curiam opinion of the Court of Appeals, issued September 23, 2021 (Docket No. 351593), p 3-5 (citations omitted).]

We must now reconsider this holding in light of *King*. In that decision, the Court held that a defendant's invalid waiver of counsel which deprived him of counsel at critical stages of the proceedings was not subject to waiver or forfeiture, and required automatic reversal. *King*, 512 Mich at 17 ("Defendant was not required to affirmatively invoke his Sixth Amendment right to counsel in order to preserve that right. Defendant was not required to object to the invalid waiver of the right to counsel, and the *Carines* forfeiture doctrine does not apply. Because defendant's waiver of his right to counsel was invalid, he was deprived of counsel during significant portions of the critical stages in the proceedings, including trial, and the error is subject to automatic reversal").

Under the Sixth Amendment, an accused has the right to counsel during all critical stages of a criminal prosecution. US Const, Am VI; see also *People v Russell*, 471 Mich 182, 187-188; 684 NW2d 745 (2004). When this right is violated it constitutes a structural, constitutional error requiring automatic reversal. *People v Willing*, 267 Mich App 208, 224; 704 NW2d 472 (2005). Not all stages of a criminal proceeding constitute critical stages. *People v Lewis*, 501 Mich 1, 8 n 4; 903 NW2d 816 (2017) (recognizing that "neither [*People v*] *Arnold* [477 Mich 852; 720 NW2d 740 (2006)] nor *Russell* could have held that the complete denial of counsel at *any* critical stage of a criminal proceeding is structural error requiring automatic reversal, when the Supreme Court of the United States has held otherwise."). "Structural errors, as explained in *Neder* [*v United States*, 527 US 1, 7; 119 S Ct 1827; 144 L Ed 2d 35 (1999)], are intrinsically harmful, without regard to their effect on the outcome, so as to require automatic reversal." *People v Duncan*, 462 Mich 47, 51; 610 NW2d 551 (2000). This holds true because "structural errors deprive defendants of basic

protections without which a criminal trial cannot reliably serve its function as a vehicle for a determination of guilt or innocence." *Id*. at 52. An error becomes a structural defect when it "infects the entire trial mechanism." *People v Anderson (After Remand)*, 446 Mich 392, 406; 521 NW2d 538 (1994). See also *Arizona v Fulminante*, 499 US 279, 309-310; 111 S Ct 1246; 113 L Ed 2d 302 (1991). Harmless error analysis should not be applied where "deprivation of the right to counsel affected—and contaminated—the entire criminal proceeding." *Satterwhite v Texas*, 486 US 249, 257; 108 S Ct 1792; 100 L Ed 2d 284 (1988).

For example, in *Lewis* the Court held that the deprivation of counsel at a preliminary examination was subject to a harmless-error analysis. *Lewis*, 501 Mich at 9. On the opposite end of *Lewis* is *King*. There, defendant was deprived of counsel minimally "during (1) pretrial preparations, including at least one pretrial hearing, (2) jury selection, (3) opening statements, (4) judge's instructions, and (5) direct and cross-examination of key witnesses." *King*, 512 Mich at 16. Unlike in *Lewis*, where the absence of counsel at the preliminary examination was subject to harmless-error analysis, because the defendant in *King* "was deprived of his right to counsel at critical *stages* of the criminal proceedings, *including at trial*, the error [was] subject to automatic reversal." *Id*. (emphasis added).[1]

In light of this precedent, we hold that defendant was not deprived of counsel at a critical stage of the proceeding such that it constituted a structural error requiring automatic reversal. As stated in our prior decision in this case, "During the less than two months that defendant represented himself with advisory counsel, two hearings took place: (1) a final pretrial hearing and (2) a hearing on defendant's motion to suppress evidence and motion to dismiss, and on the prosecutor's motion to use AM's preliminary examination testimony at trial." *Haupt*, unpub op at 4-5.

The critical stage analysis "applies to preliminary proceedings where rights may be sacrificed or defenses lost." *Duncan v Michigan*, 284 Mich App 246, 263-264; 774 NW2d 89 (2009) (quotation marks and citations omitted). In *Van v Jones*, 475 F3d 292 (CA 6 2007), the Sixth Circuit Court of Appeals lamented the lack of a "comprehensive and final one-line definition of 'critical stage,' " but stated "the Supreme Court and our court have offered six short definitional statements over time:

> 1) A critical stage presents a moment when "[a]vailable defenses may be irretrievably lost, if not then and there asserted."

---

[1] As stated by the Court in *King*, 512 Mich at 15-16:

> *Lewis* is categorically different from the instant case. The defendant in *Lewis* was only denied counsel during a preliminary examination. *Id*. at 3. Harmless-error analysis applied in *Lewis* because after defendant's preliminary examination, he was found guilty beyond a reasonable doubt in an otherwise fair trial. *Id*. at 11. Here, because defendant's invalid waiver of counsel occurred before his trial began, defendant was denied his right to counsel during most of the critical stages of the proceedings.

2) A critical stage is one "where rights are preserved or lost."

3) Counsel's assistance is guaranteed "whenever necessary to mount a meaningful defence."

4) Determination as to "whether a hearing is a 'critical stage' requiring the provision of counsel depends . . . upon an analysis 'whether potential substantial prejudice to defendant's rights inheres in the . . . confrontation and the ability of counsel to help avoid that prejudice.' "

5) A critical stage holds "significant consequences for the accused."

6) In *Lundberg* [*v Buchkoe*, 389 F2d 154, 158 (CA 6, 1968)], our court defined a "floor" for analysis as to whether a phase in a criminal proceeding may be considered critical. We do not label as a critical stage "proceedings where even the likelihood of later prejudice arising from the failure to appoint is absent." [*Id*. at 312 (citations omitted).]

The pretrial conference on June 25, 2019, was not a critical stage in the proceedings that required representation by counsel. Nothing that occurred during the conference substantially affected defendant's rights. See *United States v Benford*, 574 F3d 1228, 1233 (CA 9, 2009) (holding that the pretrial status conference in that case was not a "critical stage" because "[n]othing significant occurred," "there was no 'loss of significant rights,' " and it "plainly did not 'test[ ] the merits of the accused's case.' ") (citations omitted; second alteration in original). The prosecution reiterated a plea offer to defendant that he had previously rejected, and that he rejected again, and the court set a date by which defendant could make a counter-offer.

Nor was the joint hearing on defendant's motion to suppress evidence and motion to dismiss, and on the prosecutor's motion to use AM's preliminary examination testimony at trial, a critical stage of the proceedings so as to require automatic reversal under *King*. Defendant moved for dismissal based on alleged discovery violations by the prosecution, just weeks before the date set for trial. We are aware of no United States Supreme Court decision holding that a hearing on a discovery motion similar to defendant's motion to dismiss, like a motion to compel, is a critical stage of criminal proceedings. And defendant had counsel—both retained and appointed—for months prior. Appointed counsel Scott Moore was originally appointed to represent defendant in October 2018, and tried to work with defendant for months until requesting to withdraw because of defendant's actions. During that time, Moore received discovery from the prosecutor and participated in the remand to district court for a preliminary examination where he cross-examined AM and a detective.

With regard to the prosecution's motion for admission of AM's preliminary examination testimony at trial under MRE 804(b)(1), defense counsel Moore had the opportunity to and did cross-examine AM at the preliminary examination. It was that testimony that was ultimately read into evidence at trial. Accordingly, we hold that defendant suffered no significant consequences related to his right to confront this witness from lack of appointed counsel for this motion.

The same holds true for defendant's motion to suppress. Defendant argued in his motion and at the hearing that the initial search warrant authorizing a search of his cell phone for stalking was overbroad, and led to a second search warrant and the discovery of evidence, including explicit

pictures, that resulted in his charges for child sexually abusive activity and material. Before jury selection commenced on the first day of trial, the court denied defendant's motion to suppress.

In *McCray v Illinois*, 386 US 300, 307; 87 S Ct 1056; 18 L Ed 2d 62 (1967), the Supreme Court explained in a Sixth Amendment Confrontation Clause case that a suppression hearing implicates a lesser concern than trial itself:

> We must remember . . . that we are not dealing with the trial of the criminal charge itself. There the need for a truthful verdict outweighs society's need for the informer privilege. Here, however, the accused seeks to avoid the truth. The very purpose of a motion to suppress is to escape the inculpatory thrust of evidence in hand, not because its probative force is diluted in the least by the mode of seizure, but rather as a sanction to compel enforcement officers to respect the constitutional security of all of us under the Fourth Amendment. If the motion to suppress is denied, defendant will still be judged upon the untarnished truth. [Citation omitted.]

Two federal courts addressing habeas appeals have discussed whether suppression hearings are a critical stage of the criminal proceeding that counsel must attend to avoid automatic reversal. One of those courts determined such a hearing to be a critical stage of the proceeding, and held that because counsel was not present for it, the defendant should have been awarded a new trial. See *Henderson v Frank*, 155 F3d 159, 171-172 (CA 3, 1998). The other court upheld the denial of habeas relief because "no Supreme Court precedent has directly addressed the issue of whether the denial of counsel at a hearing on a motion to suppress is a 'complete denial of counsel' at a 'critical stage' of a criminal proceeding for the purposes of the Sixth Amendment." *Gomez v Thaler*, 526 F Appx 355, 359 (CA 5, 2013). Additionally, in *United States v Hamilton*, 391 F3d 1066 (CA 9, 2004), the Ninth Circuit Court of Appeals held that a suppression hearing constituted a critical stage of the proceedings, stating, " '[i]t is quite clear that a pretrial motion to suppress evidence is a critical stage of the prosecution requiring the presence of counsel for the accused,' because in many cases the crucial issue is the admissibility of evidence found in the defendant's possession." *Id*. at 1070, quoting *Olney v. United States,* 433 F2d 161, 163 (CA 9, 1970). There, "at the suppression hearing the district court permitted the government to conduct redirect examination of the searching officer concerning [the defendant] with neither [the defendant] nor his counsel present." *Hamilton*, 391 F3d at 1068.

We have no doubt that a suppression hearing could be a critical stage under certain circumstances where the absence of counsel affected and contaminated the entire proceedings. But not so here. Although defendant was without counsel to draft his motion to suppress or at the motion hearing, and upon first glance, a motion to suppress evidence directly supporting defendant's charges would appear to have significant consequences, the lack of representation did not result in the loss of a substantial right here. Unlike in *Hamilton*, 391 F3d at 1069, and *Henderson*, 155 F3d at 170, where witnesses were called and questioned during the respective suppression hearings, at defendant's motion to suppress hearing, no witnesses were called. Rather, the parties made oral argument, with defendant simply reading his motion into the record, and the court denied the motion on the first day of trial. Further, at trial outside the presence of the jury, reappointed defense counsel moved to suppress the evidence related to the sexual abuse charges obtained from the second search warrant. Although he argued for suppression on a different basis than defendant had, asserting that the second search warrant authorized a search of defendant's phone, not of the data and images extracted from the phone during the first search, he cited caselaw and made a robust and nuanced argument. Thus, defense counsel had a subsequent opportunity,

which he took, to address the issues raised in defendant's motion to suppress, and in doing so prevented the irretrievable loss of defendant's defenses. Accordingly, we hold that defendant was not deprived of counsel at a critical stage of the proceeding such that it constituted a structural error requiring automatic reversal.

## II. SENTENCING ISSUES

Defendant also argues that even if the guidelines were properly scored, his sentence of 78 months to 20 years for producing child sexually abusive activity is unreasonable and disproportionate. In our prior opinion we rejected the argument, citing this Court's opinion in *People v Posey (Posey I)*, 334 Mich App 338; 964 NW2d 862 (2020), aff'd in part and vacated in part by 512 Mich 317 (2023), and stating:

> Here, defendant's sentence is at the bottom of the sentencing guidelines range of 78 to 130 months. Therefore, we must affirm defendant's sentences "absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence[s]." Because we have concluded that the challenge to the scoring of the sentencing guidelines lacks merit, and defendant does not allege that inaccurate information was relied upon in determining his sentence, MCL 769.34(10) directs that the sentence be affirmed.

> "A defendant can only overcome the presumption of proportionality by presenting unusual circumstances that would render a presumptively proportionate sentence disproportionate," such as a sentence that constitutes cruel and unusual punishment. Defendant appears to be suggesting that the unusual circumstances that would allow this Court to conclude that his within-guidelines sentence was disproportionate are (1) the numerous plea offers offered by the prosecution that included various sentences of less than one year and no more than five months, and his consensual sexual relationship with AM, who he asserts "did not look like a child" and whose pictures "were not sold as child pornography." However, defendant repeatedly chose not to accept a plea offer that he now deems to include what is "illustrative of a fair sentence," and he acknowledges that consent is not a defense to the charges in this case. Defendant has failed to show unusual circumstances and has failed to overcome the presumption that his within-guidelines sentence was proportionate. [*Haupt*, unpub op at 14 (citations omitted).]

Our Supreme Court subsequently vacated in part this Court's decision in *Posey I*, holding that appellate courts must review all sentences, even those within the guidelines range, for reasonableness, "which requires the reviewing court to consider whether the sentence is proportionate to the seriousness of the matter." *Posey (Posey II)*, 512 Mich at 352. Thus, we have now been directed to review defendant's within-guidelines sentence for reasonableness.

Generally, "the proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the 'principle of proportionality' set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), 'which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017). A trial court abuses its discretion when the sentence imposed by the trial court is disproportionate to the seriousness of the circumstances involving the offense and the offender. *Milbourn*, 435 Mich at

636. If the trial court selects a sentence that falls within the range recommended under the advisory guidelines, that sentence is presumptively proportionate. *Posey II*, 512 Mich at 357.

Our Court recently set forth the guidelines we must apply in reviewing a within-guidelines sentence for proportionality:

> "An appropriate sentence should give consideration to the reformation of the offender, the protection of society, the discipline of the offender, and the deterrence of others from committing the same offense." *People v Boykin*, 510 Mich 171, 183; 987 NW2d 58 (2022). With respect to sentencing and the guidelines, the key test is not whether a sentence departs from or adheres to the guidelines range. *Steanhouse*, 500 Mich at 472. The key test is whether the sentence is proportionate to the seriousness of the matter. *Id*. In regard to proportionality, the *Milbourn* Court "observed that the Legislature has determined to visit the stiffest punishment against persons who have demonstrated an unwillingness to obey the law after prior encounters with the criminal justice system." *Milbourn*, 435 Mich at 668. "The premise of our system of criminal justice is that, everything else being equal, the more egregious the offense, and the more recidivist the criminal, the greater the punishment." *People v Babcock*, 469 Mich 247, 263; 666 NW2d 231 (2003). [*People v Posey (Posey III) (On Remand)*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 345491); slip op at 2-3.]

"In order to overcome the presumption that the sentence is proportionate, a defendant must present unusual circumstances that would render the presumptively proportionate sentence disproportionate." *People v Burkett*, 337 Mich App 631, 637; 976 NW2d 864 (2021) (quotation marks and citation omitted).

Because the Supreme Court vacated our prior opinion with regard to defendant's sentence only insofar as it is inconsistent with *Posey II*, *Haupt*, 997 NW2d 175, we need only consider the proportionality argument defendant raised on appeal. Here, defendant's sentence is at the bottom of the sentencing guidelines range of 78 to 130 months. Defendant suggests that the unusual circumstances that would allow this Court to conclude that his within-guidelines sentence was disproportionate are (1) the numerous plea offers offered by the prosecution that included various sentences of less than one year and no more than five months, and his consensual sexual relationship with AM, who he asserts "did not look like a child" and whose pictures "were not sold as child pornography." However, as we stated in our prior opinion, defendant repeatedly chose not to accept a plea offer that he now deems to include what is "illustrative of a fair sentence," and he acknowledges that consent is not a defense to the charges in this case. Accordingly, defendant has failed to show unusual circumstances and has failed to overcome the presumption that his within-guidelines sentence was proportionate.

Affirmed.

/s/ Christopher M. Murray
/s/ Michael J. Kelly
/s/ Colleen A. O'Brien