Filed 4/15/25  P. v. Malone CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>KEVIN MALONE,<br><br>        Defendant and Appellant. | A169142<br><br>(San Mateo County<br>Super. Ct. No. 16SF001435B) |

Kevin Malone was convicted of two counts of robbery at a second trial after reversal of the judgment from his first trial due to the trial court's error in granting his request to represent himself.  The trial court at the first trial had denied Malone's motion to suppress evidence pursuant to Penal Code[1] section 1538.5, and after we remanded the case for a new trial, Malone again moved to suppress the evidence on the same grounds as his first motion.  On the present appeal, he challenges the trial court's refusal to entertain the motion on the basis that it had previously been litigated.  For the reasons we will explain, we agree that the trial court erred, but we find the error harmless.  Accordingly, we affirm the convictions.

---

[1]  Further statutory references will be to the Penal Code.

1

## BACKGROUND

Several days after the robbery of a jewelry store in Half Moon Bay, California on February 8, 2016, during which Malone's coparticipant brandished a revolver and used a taser, an Indianapolis police officer pulled over a car Malone was driving with the coparticipant as a passenger. A taser, a handgun, ammunition, and numerous diamonds were found in the car. Malone was arrested for possession of a firearm without a license.

Malone was charged with two counts of second degree robbery (§ 212.5, subd. (c).) Each count alleged that a principal was armed with a firearm (§ 12022, subd. (a)(1)) and that the loss exceeded $65,000 (§ 12022.6, subd. (a)(1)) and $100,000 (§ 1203.045, subd. (a)).

Malone pleaded not guilty and denied the enhancement allegations. In early 2018, he was found incompetent to stand trial and committed to Napa State Hospital. He was certified as restored to competency in June 2020.

In July 2020, defense counsel filed a motion to suppress evidence seized in connection with the detention, arrest and search of Malone and his belongings (§ 1538.5). On August 11, 2020, prior to the hearing on the motion set for that date, the trial court granted Malone's request to represent himself pursuant to *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*). Malone represented himself at the section 1538.5 hearing and the court denied the motion. Malone filed a motion for reconsideration, which the trial court denied after a hearing. He later filed a renewed motion, which the trial court denied without a hearing, informing Malone there were no legal grounds for a renewed motion.

After a jury trial, Malone was found guilty of the two counts of second degree robbery. The jury found true the arming allegation and allegation that the loss exceeded $65,000 and found not true the allegation that the loss

exceeded $100,000. Malone was sentenced to an aggregate five-year prison term.

Malone appealed, arguing the trial court failed to adequately advise him of the consequences of self-representation, and the People conceded the issue. We agreed, reversed the judgment and remanded for further proceedings. (*People v. Malone* (Feb. 15, 2023, A162946) [nonpub. opn.].)

Back in the trial court, on May 25, 2023, Malone again moved to represent himself and filed a written advisement and waiver of the right to counsel. The court granted the motion.

Malone again filed a motion to suppress, arguing the same points he had argued at the suppression hearing at the first trial. The People opposed the motion on the grounds that it had already been litigated. The trial court denied the motion, telling Malone he was not entitled to relitigate it because the reversal of his convictions was not based on Fourth Amendment issues.

Malone's retrial took place in October 2023. On October 30, the jury found him guilty of both counts of robbery and found true the arming allegation and allegation that the loss exceeded $65,000. The court again imposed an aggregate sentence of five years.

Malone filed a timely notice of appeal.

## DISCUSSION

Malone argues he was entitled to renew his suppression motion on remand for two reasons: First, the ruling on the first suppression motion should have no binding effect because the trial court erred in granting the *Faretta* motion pursuant to which Malone represented himself on that motion and, second, the unqualified reversal of the judgment following the first trial allowed him to renew and seek reconsideration of all pretrial motions, including the motion to suppress.

3

The People dispute both of these contentions, in large part because Malone chose to represent himself again and his renewed suppression motion was based on the same grounds as the first one. As we will discuss, to the extent the People accept that either of the principles Malone relies on would permit relitigation of a motion to suppress evidence after an appellate reversal, they argue the repetitive nature of this case negates their applicability.

## I.

### *Additional Background*

Malone's motions to suppress challenged the validity of the vehicle stop, detention and search, and the basis for his arrest for possession of the firearm found during the search. His initial motion, written by defense counsel before Malone requested to represent himself, argued with little elaboration that there was no reasonable suspicion to justify the detention, as the police had no information indicating he was involved in criminal activity; that even if the traffic stop was warranted, it was unduly prolonged; and that no exceptions to the warrant requirement applied. Malone's oral argument at the hearing and subsequent in propria persona written motions for reconsideration argued there was no probable cause for the detention because there was no physical evidence of a traffic infraction, the detention was unduly prolonged by police waiting for the arrival of a K-9 unit; there no probable cause to search the car because the police dog gave a false alert and no significant amount of drugs was found; the arrest for firearm possession was unlawful under the Second Amendment and McClure-Volkmer Act of 1986 (McClure-Volkmer)[2] because the unloaded, inaccessible firearm found in

---

[2] "McClure-Volkmer Act," refers to the Firearms Owners' Protection Act (18 U.S.C. § 921 et seq.). Malone's argument was based on section § 926A

4

the trunk was legal under that Act; and there was no other justification for the arrest.

The circumstances of the traffic stop and subsequent search were described at the first trial by two Indianapolis police officers. According to their testimony, Sergeant McDonald pulled the car over due to two traffic infractions McDonald observed while driving directly behind it on the interstate freeway. First, the car changed lanes without the advance signaling required by Indiana law, signaling "pretty much, simultaneous" with the lane change. Second, the windows of the car were darkly tinted, a violation of a state law requiring that occupants of a vehicle be easily recognized or identified and allowing "excessive" tint only with a doctor's permit carried in the vehicle. Malone took an unusually long time to pull over, continuing for about half a mile before stopping.

Once stopped, Malone refused to get out of the car despite McDonald repeatedly directing him to do so, and McDonald "escorted him out."[3] Officer Roa, who had seen the traffic stop from about 1,000 to 2,000 feet away, arrived with his police dog within two to three minutes of the stop, while McDonald was still conducting a license and records check. The police dog sniffed the exterior of the car and alerted to the odor of narcotics, and the ensuing search inside the car revealed "evidence of drug use" ("residue and red baggy along with marijuana shake") but no controlled substances. The police also found an unloaded handgun behind the back passenger seat,

of title 18 of the United States Code, a provision of that Act dealing with interstate transportation of firearms. (See *Rhode v. Bonta* (S.D.Cal. 2024) 713 F.Supp.3d 865, 886.)

[3] McDonald testified that this was for officer safety because of their location on the shoulder of the freeway and because there were two occupants in the car.

easily accessible by folding the seat forward, albeit not by the driver while the car was moving. No license for the weapon was found and neither Malone nor his passenger would answer questions about whose gun it was or where they were coming from or going to. Diamonds, a taser and boots were also found in the car.

Malone cross-examined the officers about the circumstances of and justification for the traffic stop, including the absence of physical proof of the infractions officer observed such as video footage of the lane change or testing of the degree of window tint; the accessibility of gun and legality of possessing it under McClure-Volkmer and the justification for searching for drugs. The court further questioned the officers on a few points, including the length of time between the initial stop and the arrival of and search by the police dog.

In denying the motion to suppress, the court explained that while Malone's questions about proof of the traffic infractions might raise reasonable doubt at trial, the officer's testimony was sufficient to demonstrate the articulable basis for suspicion relevant for the suppression motion, and that the order to get out of the car was lawful. The "key" issue for the court was whether the detention was unduly prolonged. The court found the officers credible in testifying that Malone's license and records were still being checked when the dog's exterior sniff occurred, and found the dog's alert provided probable cause for the further search.

At the hearing on Malone's motion for reconsideration, the court addressed Malone's argument that his arrest for firearm possession was unlawful because he was transporting the firearm in compliance with McClure-Volkmer. The court found Malone's position incorrect because he had not established, as required for the federal law to apply, that possession

6

of the firearm would have been lawful in both the location he travelled from and his destination, and neither he nor his passenger even "admitted knowledge or ownership of the firearm." Additionally, the court explained that even if the arrest was unlawful, the police dog's alert created probable cause to "expand the scope of the stop," "investigate potential controlled substance violation, and search of the vehicle."

Malone's renewed motion at the second trial again argued that there was no traffic infraction to justify the stop and no video or other physical evidence to prove an infraction; there was no basis for the detention while awaiting arrival of a K-9 unit because McDonald did not "see or smell anything illegal," found no weapons on Malone or his passenger, no warrants for either, and no problems with the driver's license, registration and insurance; for the same reasons, there was no "probable cause or reasonable suspicion" to justify searching the vehicle; and the arrest was unlawful because the Second Amendment and McClure Volkmer protected their right to have the unloaded firearm in the trunk of the car.

## II.

### *Relitigation Following Unqualified Remand*

"A reversal of a judgment without directions is an order for a new trial. (§ 1262.) 'An unqualified reversal remands the cause for new trial and places the parties in the trial court in the same position as if the cause had never been tried.' (*People v. Murphy* (1963) 59 Cal.2d 818, 833.) 'The granting of a new trial places the parties in the same position as if no trial had been had. . . .'" (§ 1180.) [¶] That status even permits amendment of the accusatory pleading (see *People v. Chadd* (1981) 28 Cal.3d 739, 758), as well as renewal and reconsideration of pretrial motions and objections to the admission of

7

evidence. (See, e.g., *People v. Murphy, supra*, 59 Cal.2d at pp. 833-834.)" (*People v. Mattson* (1990) 50 Cal.3d 826, 850 (*Mattson*).)

Malone relies on this general principle to argue the trial court erred in denying his renewed motion to suppress without a hearing. The People contend this reliance is misplaced because section 1538.5 bars relitigation of a suppression motion in the trial court, a section 1538.5 suppression motion "is not a part of trial," and *Mattson* "did not contemplate pre-trial evidentiary motions unconnected to trial." The People also emphasize that Malone did not raise any new arguments or evidence in his renewed motion.

Section 1538.5 generally affords a defendant only one opportunity to move for suppression of evidence in superior court, prior to trial. (*People v. Brooks* (1990) 26 Cal.3d 471, 476 (*Brooks*).)[4] "Section 1538.5 provides a comprehensive and exclusive procedure for the final determination of search and seizure issues prior to trial. Its enactment was chiefly aimed at redressing defects identified in the previously existing procedures: (i) the unnecessary expenditure of time and effort in allowing repeated challenges to the legality of a search or seizure during the course of a criminal proceeding; (ii) the waste of jury time in permitting search and seizure questions to be raised during trial, since the determination of these issues takes place outside the presence of the jury; and (iii) the lack of adequate opportunity for the prosecution to obtain appellate review of an adverse decision on a search and seizure question before trial commences and jeopardy attaches." (*Brooks,* at pp. 475-476.) Accordingly, a trial court may not entertain a second section

---

[4] A defendant initially charged by complaint is also entitled to bring a motion to suppress evidence at the preliminary hearing. (*Brooks, supra,* 26 Cal.3d at p. 476.)

1538.5 motion seeking "relitigation of matters that the parties had opportunity to fully air in the first hearing[]." (*Brooks,* at p. 478.)

It does not necessarily follow, however, that section 1538.5 precludes relitigation of a suppression motion after an unqualified reversal on appeal. Section 1538.5 does not expressly address relitigation of a motion to suppress after an appellate reversal.[5]  The California Supreme Court has observed on several occasions that while section 1538.5 " 'imposes certain limits on the relitigation of suppression issues[,] . . . [n]o case has decided the extent to which section 1538.5 precludes such relitigation after an appellate reversal.' " (*People v. Moore* (2006) 39 Cal.4th 168, 175-176 (*Moore*), quoting *People v. Boyer* (2006) 38 Cal.4th 412, 443, fn. 18; *Mattson, supra,* 50 Cal.3d at p. 850, fn. 10.)[6]

*Mattson* applied the general principle that pretrial motions are subject to relitigation after reversal on appeal of the trial court's ruling that confessions alleged to have been obtained in violation of the Fifth and Sixth Amendments were admissible.  The motion had been filed as a section 1538.5 motion, but *Mattson* rejected the argument that section 1538.5 statutorily barred relitigating it after the appeal because section 1538.5 "is properly used only to exclude evidence obtained in violation of a defendant's state and/or federal (Fourth Amendment) right to be free of unreasonable search and

---

[5]  The statutory provisions the People cite provide that a motion must be made "only upon filing of an information," except that it may be made at the preliminary hearing with regard to evidence the People seek to introduce at the preliminary hearing (§ 1538.5, subd. (f)(1)), and that "[t]he proceedings provided for in this section . . . shall constitute the sole and exclusive remedies prior to conviction to test the unreasonableness of a search or seizure . . . ." (§ 1538.5, subd. (m).)

[6]  The parties offer no more recent case addressing the issue, and we are aware of none.

seizure" and the motion at issue was based on different grounds. (*Mattson, supra,* 50 Cal.3d at pp. 850-851.) *Mattson* observed that section 1538.5 "may preclude relitigation" of suppression motions, citing *Brooks, supra,* 26 Cal.3d 471, but expressly declined to decide whether "the limitations on relitigation of the admissibility of evidence obtained as a result of an unreasonable search and seizure preclude relitigation prior to a *retrial*." (*Mattson,* at p. 850, fn. 10, italics added.)

The limitations *Brooks* discussed are that section 1538.5 requires motions to suppress to be litigated "prior to trial," a defendant "is not entitled to renew his pretrial motion to suppress at trial" and "subject to a narrowly circumscribed exception ([§ 1538.5,] subd. (h)) [a defendant] is not permitted to raise search and seizure issues for the first time at trial." (*Brooks, supra,* 26 Cal.3d at p. 476; see § 1538.5, subds. (f), (h), (i).) In *Brooks,* the question was whether a suppression motion could be litigated after reversal on appeal where the trial court had decided the initial motion on one of the grounds raised without addressing the other. (*Brooks,* at pp. 474-475.) *Brooks* rejected the People's contention that the trial court lacked jurisdiction to entertain the second motion, holding that because the defendant "lacked opportunity for a full determination of the merits of his motion" at the first hearing, "the trial court had jurisdiction to entertain defendant's renewed motion for the purpose of affording him the full hearing to which he was initially entitled." (*Id.* at p. 475.) "[T]he renewed hearing amounted to neither consideration of a second section 1538.5 motion nor a relitigation of his original motion, but rather a completion of the full hearing to which he was entitled." (*Id.* at p. 481.)

*Moore* provides another example of a situation in which a new or renewed suppression motion was not precluded following a reversal on appeal

because the parties did not have a full opportunity to litigate the original motion.  In *Moore,* the law governing reasonableness of the search had changed during the pendency of the appeal.  (*Moore, supra,* 39 Cal.4th at p. 171.)  *Moore* explained that "[a]lthough we have stated that reopening a suppression motion on the basis of new legal theories would defeat section 1538.5's purpose 'to avoid the continued relitigation of the question of the admissibility of evidence,' " a new hearing was not barred "where during the appeal a change in the law necessarily prevented parties from presenting all pertinent facts and theories at the suppression hearing."  (*Id.* at p. 176.)

Here, Malone argues that the trial court's erroneous granting of his *Faretta* motion amounted to a denial of counsel, a structural error that rendered the " 'adversary process . . . presumptively unreliable.' " (*United States v. Hamilton* (9th Cir. 2004) 391 F.3d 1066, 1070 *(Hamilton),* quoting *Roe v. Flores-Ortega* (2000) 528 U.S. 470, 483.)  We will discuss the merits of this argument below, but if it is correct with respect to the suppression hearing, it follows from the cases we have discussed that section 1538.5 would not preclude Malone from renewing his motion on remand because his previous unrepresented litigation of the motion could not be seen as a full and fair opportunity to present it.

The People additionally emphasize that Malone's motion did not indicate he had any arguments or evidence to present that had not been presented at the first suppression hearing and broadly state that parties are not entitled to relitigate suppression motions after an unconditional reversal unless they present new or different evidence.  *People v. Anderson* (2008) 169 Cal.App.4th 321, the People's authority for this point, does not go quite so far.  *Anderson* explained that while "an unconditional reversal ordinarily wipes the slate clean" and entitles the parties to "have the trial court

11

'redetermine' evidentiary and other matters" (*id.* at p. 332), the law of the case doctrine may preclude such redetermination "[w]hen the appellate court has actually ruled on a particular issue" (*id.* at p. 331). Thus, "an appellate court's ruling on a suppression motion must be adhered to on remand unless the evidence presented is not 'substantially the same' as the evidence presented at the first trial. (*Mattson*[], *supra,* 50 Cal.3d at p. 850.) Stated differently, a party is entitled to have a suppression motion redetermined on remand only if the party offers 'new or different' evidence from the evidence considered by the original trial court. (*Id.* at p. 853.)" (*Anderson,* at p. 333.)

Unlike *Anderson,* in the present case, the law of the case doctrine does not apply because Malone's first appeal did not challenge, and we did not decide, the merits of the trial court's ruling on the suppression motion. *Anderson* did not address application of the unqualified reversal rule in this situation, and the People offer no other authority for their assertion that a suppression motion can never be renewed on remand absent new or different evidence, even if the original suppression motion was not addressed by the appellate court.

The People also argue that the unqualified reversal rule does not apply to a section 1538.5 motion because a section 1538.5 suppression motion "is not a part of trial" and *Mattson* "simply noted that all pre-trial rulings connected to the admissibility of evidence at trial—in limine motions—may be relitigated" and "did not contemplate pre-trial evidentiary motions unconnected to trial." This characterization of section 1538.5, in our view, obscures the issues. We do not see how a section 1538.5 motion can be considered "not a part of trial" and "unconnected to trial" when its purpose is to determine whether the challenged evidence can be presented at trial. *Mattson* does not suggest otherwise.

12

## III.

### *Relitigation Following Improperly Granted* Faretta *Motion*

Malone argues the trial court's ruling on his first motion to suppress should not be given binding effect because the validity of the proceedings it resulted from was undermined by the trial court's error in granting his *Faretta* motion. " '[A] pretrial motion to suppress evidence is a critical stage of the prosecution requiring the presence of counsel for the accused,' because in many cases the crucial issue is the admissibility of evidence found in the defendant's possession. [Citation.]" (*Hamilton, supra,* 391 F.3d at p. 1070; see *Gardner v. Appellate Division of Superior Court* (2019) 6 Cal.5th 998, 1005 [" 'suppression hearings often are as important as the trial itself' " and " '[i]n . . . many cases, the suppression hearing [is] the *only* trial . . .' "].) Accordingly, denial of counsel on a suppression motion is a violation of the constitutional right to counsel. (*Hamilton,* at p. 1070.)[7]

---

[7] The People maintain that Malone's reliance on *Hamilton, supra,* 391 F.3d 1066, is misplaced, although they do not expressly argue that a suppression hearing is not a critical stage of a criminal prosecution. The trial court in *Hamilton* allowed the evidence against the defendant to be presented at a suppression hearing when neither the defendant nor defense counsel was in the courtroom. The People assert the case before us is "hardly on the same level," as Malone was present for the hearing on the first suppression motion and, after the reversal on appeal, he chose to represent himself again on the same motion, raising the same issues.

While the People's argument may be relevant to determining whether Malone was prejudiced by any error with respect to his suppression motion at the second trial, the suggestion that there was less of a violation of the right to counsel in the present case is not persuasive. As Malone was present at the suppression hearing at the first trial without counsel due to the court's error in allowing him to represent himself, that unrepresented presence cannot be seen as a remedy for the violation of his right to counsel. Nor can his choice to represent himself again at the second trial be seen as

Malone relies on *People v. Waldon* (2023) 14 Cal.5th 288, 310 (*Waldon*), which held that the effect of a trial court's error in granting the defendant's *Faretta* motion was "the 'total deprivation of the right to counsel at trial,' " a structural error " 'which def[ies] analysis by "harmless-error" standards' " and " 'results in per se reversal.' " (*Waldon,* at p. 310.)

In *Waldon,* a little more than a year after one judge denied the defendant's *Faretta* motion, a second judge granted his request to represent himself without considering the first judge's decision and the evidence it was based on. (*Waldon, supra,* 14 Cal.5th at pp. 295, 309.) That evidence included "testimony from three mental health experts that caused [the first judge] to conclude that Waldon was not competent to validly waive counsel or represent himself." (*Id.* at p. 307.) Despite "significant questions about Waldon's mental capacity," the second judge spoke "only briefly" to him before granting the motion. (*Id.* at p. 309.) *Waldon* explained that by overturning the first judge's denial, the second judge deprived Waldon of two protections afforded by the first judge's denial of the *Faretta* motion: "protection of Waldon's constitutional right to counsel after finding that Waldon had a mental disorder that prevented him from understanding the significance and consequences of waiving that right" and "protection of Waldon's right to a fair trial after a finding that he was unable to present a defense because of his mental impairment." (*Waldon,* at pp. 309-310.) The second judge "did not establish Waldon's valid waiver of counsel" or "consider or address Waldon's competence to present a defense." (*Id.* at p. 309.)

---

demonstrating he was not in fact deprived of counsel with respect to the first suppression motion.

14

The People attempt to distinguish *Waldon,* arguing that the trial court's error in granting Malone's *Faretta* motion did not result in a total deprivation of his right to counsel at the suppression hearing because his first appeal focused on his access to advisory counsel at trial, not at a previous hearing, and the suppression motion was not mentioned on appeal by him or by this court. This argument misses the point. Our opinion on Malone's first appeal did particularly note that the court's failure to advise Malone he would not have a right to advisory counsel was significant in light of his repeated requests for advisory counsel at trial, but that was not the only reason we found the *Faretta* colloquy inadequate. And while the suppression motion was not directly put at issue in the first appeal, the improper granting of the *Faretta* motion preceded the suppression hearing. Our concerns about Malone's waiver of his right to counsel at trial are no less relevant to waiver of his right to counsel at the suppression hearing, which determined the admissibility of the evidence used against him at trial.

The People also argue Malone was not deprived of the right to counsel with respect to his first motion to suppress because he chose to represent himself again on remand, after a proper *Faretta* colloquy, and raised the same issues. According to the People, these choices demonstrate that "his representation at the first motion to suppress did not overlook any legal or factual issues." But Malone's choice to represent himself again at the second trial does not demonstrate he properly represented himself at the first (although it may be relevant to a determination whether he was prejudiced by any error with respect to his motion at the second trial). More fundamentally, Malone's presence, without counsel, at a critical stage of the

15

prosecution could not remedy the violation of his right to counsel resulting from the improper granting of his *Faretta* motion at his first trial.[8]

In short, we agree with Malone that the improper granting of his *Faretta* motion at his first trial infected the litigation of his motion to suppress as well as the trial itself. For that reason, the trial court erred in denying Malone's renewed motion on the basis of it having been previously litigated.

## IV.

### *Harmless error*

Malone argues the trial court's error in denying his renewed motion to suppress was not harmless beyond a reasonable doubt (*Chapman v. California* (1967) 386 U.S. 18 (*Chapman*); *People v. Neal* (2003) 31 Cal.4th 63, 86 (*Neal*)) because the evidence obtained during the vehicle stop was important to establishing his identity at trial as the second participant in the robbery.[9] This is not the correct analysis. Malone does not challenge a ruling denying his suppression motion on the merits; the error in this case was denying the motion to suppress as previously litigated without allowing Malone another opportunity to present his arguments and evidence to the

_____

[8] For the same reasons, the People's assertion that the present case is "hardly on the same level" as *Hamilton, supra,* 391 F.3d at page 1070, where the deprivation of counsel was that neither the defendant nor counsel was present at the suppression hearing, misses the mark.

[9] While the improper granting of Malone's *Faretta* motion at the first trial was structural error that would require reversal without a showing of prejudice, Malone does not challenge the order allowing him to represent himself at the second trial but rather challenges the trial court's denial of his suppression motion at that trial. The beyond a reasonable doubt standard for assessing prejudice from constitutional error applies to error in denying a suppression motion. (*Neal, supra,* 31 Cal.4th at p. 86.)

16

court. Before we consider what impact suppression of the evidence would have had on the outcome of the second trial, we must assess whether holding a hearing to allow Malone to relitigate the motion could conceivably have resulted in suppression of the evidence Malone sought to suppress.  If there is no reasonable doubt that a hearing on the renewed motion would have resulted in another denial, there is no basis to conclude that denial of the hearing was prejudicial.

The People's brief does not respond to Malone's argument that the trial court's error was prejudicial, but the People's emphasis throughout their brief on Malone's choices to again represent himself and to renew his motion on the same grounds as before have a bearing on harmless error analysis.  As we have described, Malone's renewed motion sought to litigate precisely the same issues the court had previously considered, with no indication he had any different arguments or evidence to support his position—in other words, he offered no basis for the trial court to change its mind.

Malone argues he was not given an opportunity to present new or different evidence in a limited evidentiary hearing, by offer of proof or otherwise.  But he did not request any such procedures and gave the court no reason to suspect there might be a need for them, and even on this appeal he suggests nothing he might have done differently at a second hearing except to assert, without further explanation, that he can "present different facts through different cross-examinations of the prosecution witness."  He argues that his second self-representation was not the same as the first because he was given a detailed written advisement and waiver form and the court appointed advisory counsel who would provide "some assurance" of his competence.  But he does not explain how either of these differences from the circumstances of the first suppression motion might have changed the legal

or factual bases for the motion. In fact, Malone *had* the benefit of advisory counsel when he prepared his second written motion, but it did not include any arguments other than the ones he made at the first suppression hearing. Nor did the renewed motion mention, or suggest he intended to offer, any new or different evidence. Finally, the trial court thoroughly considered Malone's challenges to the stop, detention and search at the hearings on Malone's motion to suppress and motion for reconsideration at the first trial and Malone fails to identify any error in the trial court's analysis of the issues and evidence that he could have rectified at a new hearing.

In these circumstances, Malone has failed to meet his burden to show the failure to hold a hearing on the merits of his renewed motion was prejudicial under *Chapman*. This conclusion does not mean we are giving binding effect to the order resulting from the first suppression hearing or finding the structural error at the first hearing harmless, as Malone suggests in his reply brief. We are simply acknowledging that in the circumstances present here, there is no reasonable possibility that granting a hearing on Malone's renewed motion could have resulted in an order suppressing the challenged evidence. Consequently, there is no reasonable doubt the refusal to allow Malone to relitigate his suppression motion " 'did not contribute to the verdict obtained.' " (*Neal, supra,* 31 Cal.4th at p. 86, quoting *Chapman, supra,* 386 U.S. at p. 24.)

## DISPOSITION

The judgment is affirmed.

18

STEWART, P.J.


We concur.


RICHMAN, J.


MILLER, J.


*People v. Malone* (A169142)